GLENN L. BRIGGS (SBN 174497)
Email: gbriggs@kadingbriggs.com
THERESA A. KADING (SBN 211469)
Email: tkading@kadingbriggs.com
KADING BRIGGS LLP
100 Spectrum Center Drive, Suite 800
Irvine, California 92618
Telephone: (949) 450-8040
Facsimile: (949) 450-8033

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAUDLEY SIMON, on behalf of himself, all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION, a National Banking Association; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 2:20−cv−00211 JAK (ASx)<br><br>Assigned to Judge John A. Kronstadt<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Complaint Filed:  December 2, 2019 |

493470

# TABLE OF CONTENTS

**PAGE NO.**

I.   INTRODUCTION ............................................................................... 7

II.  PLAINTIFF CANNOT REPRESENT HIS PROPOSED CLASSES BECAUSE HE HAS "SERIOUS CREDIBILITY PROBLEMS" ................ 8

III. PLAINTIFF'S "PERSONAL APPEARANCE POLICY" CLASS SHOULD NOT BE CERTIFIED ................................................................ 9

   A.  The Policy at Issue:  Wells Fargo's Personal Appearance Guidelines Require Only that Employees Dress "Professionally". ...... 9

   B.  Three Reasons Why Plaintiff's Personal Appearance Guidelines—Purchase Claim Is Not Proper for Class Treatment. .... 10

      1.  No Court Has Ever Taken Plaintiff's Position that "Professional Attire" Is a "Uniform" Subject to Reimbursement And There Are Obvious Reasons Why ......... 10

      2.  Whether any Item of Work Clothing Was a "Necessary Expenditure" Is Inherently an Individual Inquiry. .................. 12

      3.  Determining whether each Item of Work Clothing Is Subject to Reimbursement Would Be Wildly Unmanageable. ...................................................................... 14

   C.  Plaintiff's Dry Cleaning Reimbursement Claim Cannot Be Certified for Largely the Same Reasons. ........................................... 15

IV.  PLAINTIFF CANNOT CERTIFY HIS PAYSTUB CLASS BECAUSE HE IS AN INADEQUATE CLASS REPRESENTATIVE AND HE HAS OFFERED NO PROOF OF INJURY LET ALONE COMMON PROOF ...................................................................................... 16

   A.  The Governing Law and Relevant Facts ........................................... 16

      1.  The Law Is Clear: "Electronic Records" Satisfy the Requirement that a Pay Voucher Be Provided "in Writing ..... 16

      2.  Wells Fargo Provides Wage Statements to Employees "in Writing" Multiple Ways. .................................................... 17

   B.  Plaintiff Is Not an Adequate Class Representative. ........................... 18

   C.  Plaintiff Failed to Produce any Evidence of Actual Injury as Required by Section 226(e) or "Common Proof" of Injury. ............. 19

V.   PLAINTIFF'S THREE SECTION 226.7-BASED CLAIMS SHOULD NOT BE CERTIFIED ............................................................................... 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS (cont'd)

PAGE NO.

A.   Wells Fargo Maintains a Compliant Meal and Rest Break Policy and Generously Pays Premiums for Employees' Self-Reported Noncompliant Meal and Rest Breaks "No Questions Asked"..................................................22

B.   Plaintiff's Meal and Rest Break Premium Underpayment Class Cannot Be Certified for Two Reasons. ...................................23

   1.   Plaintiff Is Not a Member of His Own Proposed Class. .........24

   2.   Liability Requires a Threshold Finding that Wells Fargo Failed to Provide Meal and Rest Periods and, on that Issue, Individual Issues Predominate..................................................24

   3.   The 2020 Trial of *Hamideh v. Wells Fargo* Demonstrates the Predominance of Individual Issues....................................26

C.   Plaintiff's "Interrupted" Meal Period Argument Is a Red Herring and Cannot Salvage His Meal Period Policy Class. .........................28

   1.   Plaintiff Cannot Get around *Brinker* by Focusing on a Perceived Deficiency in the Self-Reporting System. ..............29

   2.   Federal Courts Agree, and Putative Class Member Testimony Affirms, that Individual Issues regarding Alleged Interrupted Meal Periods Predominate over Common Ones. ..................................................................29

D.   Plaintiff's Rest Period Policy Class Is Based on a Similar Time-Tracker-Related Red Herring Theory and Cannot Be Certified...........................................................................................31

   1.   Plaintiff Does Not Attack the Lawfulness of Wells Fargo's Rest Period Policy (Nor Could He) and Instead Improperly Focuses on Wells Fargo's "System for Paying Premiums." ...............................................................32

   2.   In the Absence of an Unlawful Policy, Individual Issues Predominate. ...............................................................33

   3.   Attacking Wells Fargo's System for Self-Reporting Noncompliant Rest Breaks Is a Red Herring. .........................33

   4.   Putative Class Member Evidence Demonstrates that Individual Issues Predominate Over Common Ones. .............35

VI.   THE PROPOSED CLASSES MUST BE NARROWED ...........................36

VII.   CONCLUSION .............................................................................36

WELLS FARGO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

PAGE NO.

**STATE CASES**

*Brinker Restaurant Corp. v. Super. Ct.*,
   53 Cal. 4th 1004 (2012).............................................................*Passim*

*Ferra v. Loews Hollywood Hotel, LLC*,
   40 Cal. App. 5th 1239 (2019)..............................................................23

*Gutierrez v. Brand Energy Services of Calif., Inc.*,
   50 Cal. App. 5th 786 (2020)................................................................11

*Kirby v. Immoos Fire Protection, Inc.*,
   53 Cal. 4th 1244 (2012).................................................8, 21, 25, 26, 33, 34

*Maldonado v. Epsilon Plastics, Inc.*,
   22 Cal. App. 5th 1308 (2018)..............................................................19

*Morgan v. Wet Seal, Inc.*,
   210 Cal. App. 4th 1341 (2012)..............................................7, 12, 13, 14, 15

*Murphy v. Kenneth Cole Prod., Inc.*,
   40 Cal. 4th 1094 (2007)....................................................................18

*Townley v. BJ's Restaurants, Inc.*,
   37 Cal. App. 5th 179 (2019)...............................................................11

*Villacres v. ABM Indus. Inc.*,
   189 Cal. App. 4th 562 (2010)..............................................................19

**FEDERAL CASES**

*Adam Bros. Farming, Inc. v. Cnty. Of Santa Barbara*,
   604 F. 3d 1142 (9th Cir. 2010)............................................................19

*Alcantar v. Hobart Serv.*,
   800 F. 3d 1047 (9th Cir. 2015).........................................................30, 35

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ......................................................................19

*Apodaca v. Costco Wholesale Corp.*,
   2013 WL 12171960 (C.D. Cal. Jul. 3 2013) ...............................................21

*Arroyo v. International Paper Co.*,
   2020 WL 887771 (N.D. Cal. Feb. 24, 2020)...............................................11

*Briseno v. ConAgra Foods, Inc.*,
   844 F. 3d 1121 (9th Cir. 2017).......................................................15, 35

*Conde v. Open Door Marketing, LLC*,
   223 F. Supp. 3d 949 (N.D. Cal. Apr. 27, 2017)...........................................36

# TABLE OF AUTHORITIES (cont'd)

**PAGE NO.**

## FEDERAL CASES

*Delgado v. New Albertson's, Inc.*,
  2009 WL 10670628 (C.D. Cal. Dec. 15, 2009) ............................................21

*E. Texas Motor Freight System Inc. v. Rodriguez*,
  431 U.S. 395 (1977) ...................................................................................24

*Evans v. Walmart Stores, Inc.*,
  2019 WL 7169791 (C.D. Cal. Nov. 25. 2019) ............................................21

*Gonzalez v. OfficeMax N.A.*,
  2012 WL 5473764 (C.D. Cal. Nov. 5. 2012) ...............................................30

*Javine v. San Luis Ambulance Service, Inc.*,
  2015 WL 12672090 (C.D. Cal. Jan. 13, 2015) ............................................36

*Johnson v. Estension Logistics, LLC*,
  2020 WL 8993120 (C.D. Cal. Dec. 28, 2020) .............................................19

*Kimoto v. McDonald's Corps.*,
  2008 WL 4690536 (C.D. Cal. Aug. 19, 2008) .............................................27

*Lemus v. Denny's, Inc.*,
  617 Fed Appx. 701 (9th Cir. 2015) ....................................................10, 11, 17

*Lim v. Helio, LLC*,
  2012 WL 12884439 (C.D. Cal. Apr. 18, 2012) ...........................................36

*Lindblom v. Santander Consumer USA, Inc.*,
  2018 WL 573356 (E.D. Cal. Jan. 26, 2018) ...........................................18, 19

*Luviano v. Multi Cable, Inc.*,
  2017 WL 3017195 (C.D. Cal. Jan. 3, 2017) ..................................................9

*Martinez v. Hub Group Trucking, Inc.*,
  2021 WL 937671 (C.D. Cal. Jan. 11, 2021) ................................................19

*Physicians Healthsource, Inc. v. Masimo Corp.*,
  2019 WL 8138043 (C.D. Cal. Nov. 21, 2019) ...............................................9

*Ross v. Chipotle Mexican Grill, Inc.*,
  2016 WL 7634445 (S.D. Cal. Aug. 8, 2016) ................................................19

*Roth v. CHA Hollywood Med. Ctr., L.P.*,
  2013 WL 5775129 (C.D. Cal. Oct. 25, 2013) .........................................25, 26

*Salazar v. See's Candy Shops Inc.*,
  2021 WL 1608223 (Cal. Ct. App. Apr. 26, 2021) ....................15, 18, 30, 34

*Torres v. Wells Fargo Bank, N.A.*,
  2017 WL 128050 (C.D. Cal. Mar. 21, 2017) .........................................26, 27

# TABLE OF AUTHORITES (cont'd)

**PAGE NO.**

## FEDERAL CASES

*Villacres v. ABM Indus. Inc.*,
2009 WL 111686 (C.D.Cal. Jan. 14, 2009), *aff'd* 384 Fed. Appx. 626
(9th Cir. 2010) ......................................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ..............................................................10, 12, 15, 26

## OTHER AUTHORITIES

California Code Civil Procedure Section 340(a).....................................................18

California Code Civil Procedure Section 1633.7(c)................................................17

California Code of Regulations Title 8, Section 11040(9)(A) ...............................11

California Code of Regulations Title 8, Section 11040(12)(A) ............................32

California Code of Regulations Title 8, Section 11050(9)(A) ...............................11

California Labor Code Section 213(d) ..................................................................17

California Labor Code Section 226 ...........................................................16, 20, 21

California Labor Code Section 226(a)......................................................15, 16, 19

California Labor Code Section 226(e)......................................................18, 19

California Labor Code Section 226(e)(1)...............................................................29

California Labor Code Section 226(e)(2)...............................................................19

California Labor Code Section 226(e)(2)(A),(B)...................................................20

California Labor Code Section 226.7 ............................................................*Passim*

California Labor Code Section 226.7(c)..................................................................23

California Labor Code Section 510(a).....................................................................23

California Labor Code Section 2699 .......................................................................27

California Labor Code Section 2802 ............................................................*Passim*

Federal Rule of Civil Procedure 23(a).....................................................10, 19, 35

Federal Rule of Civil Procedure 23(b)(3)......................................................14, 26

Wage Order 4 Section 9(A) .....................................................................................11

493470

WELLS FARGO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   **I.      INTRODUCTION**

2          The Court should deny certification of all five of Plaintiff's proposed classes

3   for the following reasons and others discussed further herein:

4          (1)      Plaintiff's Personal Appearance class seeking reimbursement for

5   "professional" attire is not based on a policy unlawful on its face, *i.e.*, one that

6   mandates a "uniform" by requiring distinctive colors, materials, or designs but does

7   not provide for reimbursement.  Not surprisingly, putative class member testimony

8   perfectly illustrates the many individual issues and unmanageability that would

9   permeate trial if thousands of class members working under countless supervisors'

10  interpretations of Wells Fargo's lawful policy were permitted to seek

11  reimbursement for their personal wardrobes as "necessary" expenditures.  Indeed,

12  the California Court of Appeal's *Morgan* decision (involving a more restrictive

13  dress policy) is directly on point and requires denial of certification.

14         (2)      Plaintiff's Paystub class contends that branch employees paid via

15  direct deposit were not able to obtain a paper pay voucher.  Not only is that not

16  California law – the "writing" requirement is satisfied by an electronic record -- but

17  it ignores the individualized issues that pervade given *every single employee* can: (i)

18  receive a paper pay voucher by not electing direct deposit; (ii) access and print their

19  pay vouchers any time; and (iii) request a paper pay voucher if they want one.

20  Therefore, anyone who claims they wanted a paper pay voucher and could not

21  obtain one is simply a "mini trial" that will turn on their individual circumstances.

22         (3)      Plaintiff's Meal and Rest Break Premium class contends that Wells

23  Fargo improperly paid meal and rest period premiums at employees' hourly rate of

24  compensation and not the "regular rate of pay [used for overtime]."  But whether

25  Plaintiff or Wells Fargo is right is a question the Court will never reach because

26  Plaintiff faces two barriers to certification:  (i) Plaintiff has no individual claim

27  (because it is barred by a prior class action settlement), and (ii) Plaintiff must first

28  demonstrate "common proof" that meal and rest periods were not provided -- as the

California Supreme Court made clear in *Kirby*, the violation is the failure to provide the meal/rest period, not failure to pay (or underpaying) the premium.  Plaintiff has not even attempted to produce common proof, likely because *Brinker* is an insurmountable obstacle given Wells Fargo's compliant policy.

(4)     Plaintiff's proposed "Interrupted Meal Period" class is a red herring. Plaintiff alleges (without any evidentiary support) that Wells Fargo's system for self-reporting noncompliant meal periods fails to detect "interrupted" meal periods. Simply not true:  if the interruption is recorded accurately, as required by Wells Fargo policy, Wells Fargo's system works the same as with any other allegedly noncompliant meal period; if not, a mini trial is required for each person who did not record work time accurately as required by policy.

(5)     Given Wells Fargo's facially compliant policy, Plaintiff's Rest Period class suffers a similar fate.  Specifically, Plaintiff misses the forest for the trees. This claim is based on Plaintiff's allegation (again, unsupported by any evidence) that, in some very limited circumstances, putative class members *may not* report a noncompliant rest break (despite how easy Wells Fargo has made it for employees to do so) -- but what dooms Plaintiff's claim is his failure to offer any "common proof" that Wells Fargo failed to authorize and permit rest periods.

## II.     PLAINTIFF CANNOT REPRESENT HIS PROPOSED CLASSES BECAUSE HE HAS "SERIOUS CREDIBILITY PROBLEMS"

Plaintiff's Motion should be denied for an additional reason: Plaintiff is not an adequate class representative.  Wells Fargo terminated Plaintiff's employment for dishonesty.  Specifically, there were allegations both before and after the termination of his employment that Plaintiff engaged in fraud and identity theft. Most egregiously, Wells Fargo's investigator concluded that Plaintiff issued a debit card in a customer's name without the customer's consent that was used to steal over $50,000 from the customer.  The investigator reviewed video footage and concluded that Plaintiff completed some of the transactions using the debit card.

8

*See generally* La Manna Declaration.  When questioned at deposition about the fraud/theft, Plaintiff denied any wrongdoing.  Simon Depo. 216:16-222:11.

"The honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims.  A named plaintiff who has serious credibility problems ... may not be an adequate class representative" because he "may be considered to have interests antagonistic to the class." *Luviano v. Multi Cable, Inc.*, 2017 WL 3017195, at *17 (C.D. Cal. Jan. 3, 2017).  Plaintiff's theft, for which there is substantial evidence of his guilt, on its own renders Plaintiff's credibility an insurmountable obstacle to certification; his denials, under oath, only underscore his "serious credibility problems" that preclude a finding that he is an adequate class representative.  *Physicians Healthsource, Inc. v. Masimo Corp.*, 2019 WL 8138043, at *11 (C.D. Cal. Nov. 21, 2019).

## III.   PLAINTIFF'S "PERSONAL APPEARANCE POLICY" CLASS SHOULD NOT BE CERTIFIED

Plaintiff's attempt to certify his "Personal Appearance Policy" Class rests on an unsupported and erroneous statement of the governing law and, regardless, raises myriad individual issues that would inject so much unmanageability that class treatment is not the superior method of adjudication.[1]

### A.   The Policy at Issue:  Wells Fargo's Personal Appearance Guidelines Require Only that Employees Dress "Professionally".

Like countless businesses, Wells Fargo's Personal Appearance Guidelines require employees to "use good judgment" in their attire, "present[] a neat, well-groomed appearance," and provide the following additional guidance:

---

[1] There are two components that Plaintiff seeks to certify: (i) expenses incurred to purchase clothing allegedly necessary to comply with the Personal Appearance Guidelines; and (ii) expenses allegedly incurred to dry clean work clothes.

**Appropriate and inappropriate attire**

Professional attire, such as business suits, sport coats, blazers, sweaters, dress shirts, dress pants, and dress shoes, is appropriate. Examples of inappropriate attire include, but are not limited to:
- Clothing or accessories displaying ads, offensive language, or inappropriate themes
- T-Shirts or sweatshirts (unless they include the Wells Fargo logo for a specific event), yoga pants, leggings, sweat suits, spandex, denim, camouflage, beachwear, sunglasses, or other casual clothing or accessories
- Attire that exposes bare shoulders, the navel or undergarments, or other revealing clothing
- Wrinkled, torn, soiled, faded, tight, or sheer clothing
- Shorts, skorts, cropped pants or miniskirts
- Tennis shoes, athletic shoes, hiking boots, industrial work shoes, flip-flops, thong-style sandals, slippers, Crocs
- Hats and caps

*See* Tautkus Depo. 100:8-20, Exh. 17.   That's all there is -- there are no requirements regarding colors, materials, brands, combinations of clothing, or that employees must dry clean their work clothes or wear only clothing that must be dry cleaned. *See id*.

      **B.**     **<u>Three Reasons Why Plaintiff's Personal Appearance Guidelines— Purchase Claim Is Not Proper for Class Treatment</u>.**

           **1.**    **<u>No Court Has Ever Taken Plaintiff's Position that "Professional Attire" Is a "Uniform" Subject to Reimbursement And There Are Obvious Reasons Why</u>.**

Plaintiff fails to offer any case law interpreting Section 2802 to require an employer to reimburse employees for "professional attire" worn to work.  Nor could he -- Wells Fargo has conducted an extensive search of case law and has not uncovered a single opinion in any state or federal court in the United States finding an employer obligated to reimburse employees for professional/business attire required for work.[2]

In fact, both the Ninth Circuit and the California Court of Appeal have held unambiguously that employers are **<u>only</u>** obligated to pay for or reimburse "employees' work clothing ***if the clothing is a <u>uniform</u>***." *Lemus v. Denny's, Inc.*,

---

[2] The Court may properly evaluate the merits of the claims to the extent they are "germane to the certification question."  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (the "rigorous analysis" courts must undertake to determine if the "prerequisites of Rule 23(a) have been satisfied" will "frequently . . . entail some overlap with the merits of the plaintiff's underlying claim"); *accord Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1023-24 (2012).

493470

617 Fed Appx. 701, 703 (9th Cir. 2015) (citing Cal. Code Regs. tit. 8, § 11050(9)(A)[3]); *Townley v. BJ's Restaurants, Inc.*, 37 Cal. App. 5th 179, 185 (2019).  Both *Lemus* and *Townley* addressed whether the employers were "required, under Labor Code 2802, to reimburse employees for the cost of slip-resistant shoes" that the employers' policy required them to use and which were therefore purchased "in obedience to the directions of the employer."  *Id.*

As these authorities emphasize, the mere fact that an employer requires its employees to wear certain kinds of clothing, be it generic black, slip-resistant shoes or generic "professional" apparel, does not give rise to a duty to reimburse under section 2802 when employees purchase wardrobe items "in obedience to" the employer's policy.  The duty to reimburse under 2802 *only* arises when the wardrobe items purchased constitute a uniform.  *See id.*

The Industrial Welfare Commission has defined "uniform" to include "wearing apparel and accessories of a distinctive design or color."  Cal. Code Regs. tit. 8, § 11040(9)(A).  There is no distinct design or color set forth in Wells Fargo's broad "professional attire" guidelines and Plaintiff and putative class members concur.  *See* Speech Depo. 125:6-23 (Wells Fargo work clothes not a uniform because "we all didn't dress the same"); *see also* Simon Depo. 185:12-20; Sanchez Depo. 116:9-117:12; Bouguefa Depo. 164:7-165:15; Mai Depo. 77:1-17, 91:17-92:12; Taheri Decl. ¶¶ 22-25; Sebhatu Decl. ¶¶ 17-20; Hernandez Decl. ¶¶ 20-23; Garcia Decl. ¶¶ 20-23.  Because Wells Fargo's Personal Appearance Guidelines do not constitute a "uniform" under any standard, neither Plaintiff nor any putative

---

[3] Plaintiff argues that Wage Order 4 § 9(A) conflicts with Section 2802.  Mot. 6. Plaintiff cites to *Gutierrez v. Brand Energy Services of Calif., Inc.* 50 Cal. App. 5th 786, 795 (2020) and *Arroyo v. International Paper Co.*, 2020 WL 887771, at 15 (N.D. Cal. Feb. 24, 2020) in support of this contention.  While true that *Gutierrez*— not a 2802 reimbursement case—stands for the general proposition that, when in conflict, a statute prevails over a Wage Order, *Lemus* makes clear that Wage Order 4 does not conflict with section 2802.  Moreover, *Arroyo* is inapplicable:  (1) there was no discussion about wage orders in the Northern District's analysis and (2) the dispute in *Arroyo* centered around an actual *uniform*, not *non-uniform* work clothes.

class member is entitled to reimbursement under section 2802 for the purchase of professional attire.  Where there is a lawful policy, certification is not appropriate. *See, e.g., Dukes*, 564 U.S. at 353 (noting the absence of an unlawful policy).

Moreover, one can only imagine the wide-ranging ramifications of such a holding.  Tens of thousands of law firms, banking, financial, and investment firms, and countless other businesses suddenly would be required to reimburse hundreds of thousands of employees for purchasing clothing, potentially expensive clothing, such as suits, to comply with an employer's "business attire" or even "business casual" dress code. Furthermore, what would the limits be?  Would the employer be obligated to reimburse for any clothing purchased or for a "reasonable amount not to exceed" and, if so, what is that amount and who determines it?  Would the employer be entitled to apportionment for non-work wear?  Does an employer providing reimbursement then gain an ownership interest in the clothing such that, when the employee departs, the employer is entitled to keep the clothing?  What if the employee wears clothing that he or she already owned?

The absurdity of Plaintiff's claim is further underscored by the fact that the same clothing Wells Fargo employees wear to work can be (and is) worn at different jobs and in a variety of non-work, social functions, such as weddings and engagement parties, funerals, dining out, and attending or serving in church.  *See, e.g.,* Speech Depo. 113:12-24; Sanchez Depo. 105:13-106:21; Mai Depo. 85:1-86:1, Taheri Decl. ¶ 31; Sebhatu Decl. ¶ 27; Hernandez Decl. ¶ 29; Garcia Decl. ¶ 29.  No court has endorsed Plaintiff's claim and neither should this Court give credence to this claim by certifying it.

**2.      Whether any Item of Work Clothing Was a "Necessary Expenditure" Is Inherently an Individual Inquiry.**

The California Court of Appeal's holding in *Morgan v. Wet Seal, Inc.*, 210 Cal. App. 4th 1341 (2012) demonstrates the predominance of individual issues when employees are seeking reimbursement under section 2802 for non-uniform

1    work clothing purchased pursuant to an employer's dress code.  In *Morgan*, Wet

2    Seal's dress code was more restrictive than Wells Fargo's general "professional

3    attire" policy, requiring a work wardrobe "consistent with the current fashion style

4    that is reflected in the stores."  *Id.* at 1355-56.  The Court of Appeal upheld the trial

5    court's denial of certification on the ground, in part, that "individual issues would

6    predominate over common issues pertaining to. . . the dress code claim" and that

7    "Wet Seal's written dress code . . . [policy does] not provide a common method of

8    classwide proof on central questions of liability."  *Id.* at 1344-45, 1353.

9         Those questions, which are relevant to and adapted to Plaintiff's instant claim

10   for reimbursement under section 2802, include:

11   • "assuming employees purchased wardrobe items for work, whether those
12     purchases were necessary expenditures";

13   • "how each [branch] manager interpret[s] the phrase ['professional attire']";

14   • "whether each manager require[s] employees to wear clothing that is
       usual or generally usable in the occupation";

15   • "what, if anything, the manager told the employee regarding the required
16     wardrobe";

17   • "assuming the employee purchased certain wardrobe items to wear to
       work, where the employee purchased those items"; and

18   • "[were] the particular wardrobe items actually purchased."

19   *Id.* at 1356-57.  The *Morgan* court found that these were questions relevant to Wet

20   Seal's liability that could only be resolved on an individual basis.  *Id.* at 1356.

21        Finally, the court found that "the evidence submitted by both sides

22   demonstrates that plaintiffs' theory of liability regarding its dress code claim is not

23   'reasonably susceptible to common proof but rather require individualized inquiries

24   into a myriad of circumstances depending on the particular direction of individual

25   store managers and supervisors at numerous stores" and testimonial evidence

26   demonstrated that "the common written dress code policy did not lead to common

27   dress code practices."  *Id.* at 1357.

28

The same is true in the present action.  Plaintiff's managers allegedly told him he had to wear a suit and tie (despite the fact that the Personal Appearance Guidelines have no such requirement) but other employees in his branch did not, wearing sweaters, jeans, and shirts without a tie.  Simon Depo. 174:5-19, 180:18-181:16.  Plaintiff's declarant Sanchez testified to a "blazer requirement" at the Azusa branch but not at two other branches where she worked.  Sanchez Depo. 108:24-109:6, 116:2-8.  Both declarant Speech and her colleagues wore different colored/patterned blouses and pants while she was at one branch but, when she was at another branch, her supervisor allegedly told her to "wear blazers" to look more professional.  Speech Depo. 105:12-19, 106:12-108:22; see also Bouguefa Depo. 156:9-17 (dress code not being evenly applied from store to store/person to person).

Furthermore, several witnesses testified that they often wore their work clothing in other employment situations as well as non-work-related situations.  *See* Section III.B.1, *supra*.  Their collective testimony demonstrates that such claims are "not susceptible to common proof but rather require individualized inquiries" regarding the "direction of individual [branch] managers and supervisors." *Morgan*, 210 Cal. App. 4th at 1357.

### 3. <u>Determining whether each Item of Work Clothing Is Subject to Reimbursement Would Be Wildly Unmanageable.</u>

Certification is only appropriate if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. Proc. 23(b)(3).  Specifically germane are "the likely difficulties in managing a class action."  *Id*.  *Morgan* is again instructive -- the trial court held that "individual factual inquiries would pose overwhelming case management difficulties" and "plaintiffs failed to present a 'manageable trial plan' for adjudicating the merits of . . . the dress code claim."  *Morgan*, 210 Cal. App. 4th at 1368.

The "individual factual inquiries" inherent in the present matter pose equally "overwhelming case management difficulties."  There are numerous inquiries

necessary to determine liability, not just as to each employee, *but as to each article of clothing for which an employee seeks reimbursement*, requiring the fact-finder to determine whether each item of clothing was purchased specifically for use for work at Wells Fargo and whether the purchase was "necessary."

Finally, Plaintiff has not proposed how the class claims would be managed beyond one sentence: "[T]he Labor Code section 2802 reimbursement claim necessarily turns on the legal issue of whether Wells Fargo must reimburse putative class members for the expenses they incur to comply with Wells Fargo's Personal Appearance policy." This is woefully inadequate. *See id.* at 1368-69 (finding that "plaintiffs failed to present a 'manageable trial plan' for adjudicating the merits of . . . the dress code claim"); *see also Salazar v. See's Candy Shops Inc.*, 2021 WL 1608223, at *10 (Cal. Ct. App. Apr. 26, 2021); *see also Briseno v. ConAgra Foods, Inc.*, 844 F. 3d 1121, 1131 (9th Cir. 2017) ("At the class certification stage, the class representatives bear the burden of demonstrating compliance with Rule 23.").

### C.   Plaintiff's Dry Cleaning Reimbursement Claim Cannot Be Certified for Largely the Same Reasons.

Plaintiff's claim for reimbursement of dry cleaning costs is not certifiable for three reasons. *First*, there is no requirement in Wells Fargo's dress code that employees dry clean their work clothes or that they wear "dry clean only" clothing. The absence of such a policy is fatal to Plaintiff's certification effort. *See, e.g., Dukes*, 564 U.S. at 353 (noting the absence of a general unlawful policy).

*Second,* putative class members satisfied the guidelines without dry cleaning their work clothes or wearing "dry clean only" clothing. *See, e.g.,* Taheri Decl. ¶¶ 26-30; Sebhatu Decl. ¶¶ 21-25; Hernandez Decl. ¶¶ 24-28; Garcia Decl. ¶¶ 24-28.

*Third,* therefore, any claims for reimbursement of dry cleaning costs would necessarily require highly individualized questions regarding the "necessity" of each and every dry cleaning cost, including what the putative class member dry cleaned and why, that would predominate over questions common to the class (if

any).  *See, e.g.,* Simon Depo. 185:21-187:13 (managers allegedly told him he had to dry clean his clothes but he observed others wearing clothes that did not have to be dry cleaned); Speech Depo. 109:21-111:12 (dry cleaned some clothes but not others; no one told her to dry clean—it was her personal choice); Sanchez Depo. 115:6-15 (washed all of her work clothes, even those supposedly "dry clean only," except blazers); Zamora Depo. 125:16-24 (chooses to dry clean her clothes "just because they'll last longer"); *see also* Bouguefa Depo. 168:3-169:8; Mai Depo. 78:3-14.  Thus, Plaintiff's "Personal Appearance" claim cannot be certified.

## IV.  PLAINTIFF CANNOT CERTIFY HIS PAYSTUB CLASS BECAUSE HE IS AN INADEQUATE CLASS REPRESENTATIVE AND HE HAS OFFERED NO PROOF OF INJURY LET ALONE COMMON PROOF

Plaintiff seeks to certify a class of "hourly nonexempt employees … who worked in a bank branch who were paid by direct deposit from December 2, 2018 through present," alleging that they were not provided the option to obtain a paper pay voucher, which Plaintiff contends is a violation of California law citing solely a DLSE Opinion Letter.  Mot. 14.  Certification should be denied because Plaintiff is not an "adequate representative" given his individual claim is time-barred (his last wage statement is dated November 23, 2018) and he admitted at deposition that (i) he does not recall if he ever wanted a paper pay voucher and (ii) he understood that, if he wanted one, he could contact Wells Fargo and receive one.  Regardless, certification must be denied based on the actual injury requirement and Plaintiff's failure to produce any evidence thereof, let alone the required "common proof."

### A.  The Governing Law and Relevant Facts

#### 1.  The Law Is Clear: "Electronic Records" Satisfy the Requirement that a Pay Voucher Be Provided "in Writing."

Section 226 requires an employer to furnish a pay voucher "in writing" to employees "either as a detachable part of the check" or "separately…"  Cal. Lab. C.

§ 226(a).[4]  Further, as the Ninth Circuit recognized, **California law _explicitly_** **provides that "'[i]f a law requires a record to be <u>in writing</u>, an electronic record satisfies the law.'"**  *Lemus, supra,* 617 Fed. Appx. at 704; Cal. Civ. Code § 1633.7(c); *see also* DLSE Op. L. 2006.07.06-2 (an electronically-stored pay voucher qualifies as a "statement in writing").  Plaintiff asks this Court to ignore *Lemus* and Section 1633.7 and, instead, adopt as California law the balance of the foregoing DLSE Opinion Letter (not subject to agency rulemaking requirements) expanding this onefold requirement to twofold by adding that employees must retain the right to obtain a paper voucher (however that is to be interpreted).  Mot. 8.  The Court need not decide this issue because, as discussed next, all employees may elect a traditional paper paycheck with the attached pay voucher, print the pay voucher from online, or request it from Wells Fargo.

### 2. <u>Wells Fargo Provides Wage Statements to Employees "in Writing" Multiple Ways</u>.

Employees are paid by paper payroll check (with the traditional attached pay voucher) or optional direct deposit, with employees always able to revert to the former.  Fondungallah Decl. ¶ 14; Tautkus Depo. 34:11-35:16, Ex. 2 (Wells Fargo Team Member Handbook July 2017, p. 115).  Regardless of pay method, all employees can electronically access and print their pay vouchers (free-of-cost) from their work computers via TeamWorks (Wells Fargo's intranet) as early as two days *before* each payday.  *Id.;* Fondungallah Decl. ¶ 2.  Employees also are able to access and print their wage statements 24/7 remotely from any PC, smartphone, tablet or other device with internet connectivity.  *Id.*  Putative class members, including Plaintiff, so confirm.  *See* Simon Depo. 160:7-164:12; Speech Depo.

---

[4] While the statute (adopted in 1943 before direct deposit existed) attaches to the "separately" language payment by cash or personal check, and is silent as to direct deposit, given direct deposit is a method of pay expressly authorized by law (Cal. Lab. Code § 213(d)), it clearly must be treated under the "separately" language because, like a cash payment (and unlike a payroll check), a pay voucher cannot be attached to a direct deposit.  Regardless, Plaintiff does not contend otherwise.

98:14-100:1; Sanchez Depo. 160:1-161:12, 162:13-16; Zamora Depo. 32:2-34:12, 104:1-15; Mai Depo. 26:22-27:5, 74:24-76:3; Bouguefa Depo. 178:22-179:12; Taheri Decl. ¶ 32; Sebhatu Decl. ¶ 28; Hernandez Decl. ¶ 30; Garcia Decl. ¶ 30.

Furthermore, all employees may ask Wells Fargo to provide them with paper pay vouchers at any time. While Plaintiff contends in his Motion that this last option is limited to employees with no work or outside internet access to TeamWorks, that simply is not true – any employee requesting a paper pay voucher is provided it, including those like Plaintiff with access to TeamWorks at their desk.[5]  Tautkus Depo. 125:6-16; Fondungallah Decl. ¶ 14.   In fact, Plaintiff himself testified at deposition that he understood that, if he wanted a paper pay voucher (he did not), he could simply request one. This point is beyond dispute. Simon Depo. 164:20-165:2; Speech Depo. 98:11-13; Sanchez Depo. 162:2-11; Taheri Decl. ¶ 32; Sebhatu Decl. ¶ 28; Hernandez Decl. ¶ 30; Garcia Decl. ¶ 30.

### B.   Plaintiff Is Not an Adequate Class Representative.

Section 226(e) is subject to California's one-year statute of limitations for recovery of penalties. Cal. Code Civ. Proc. § 340(a); *Murphy v. Kenneth Cole Prod., Inc.*, 40 Cal. 4th 1094, n 16 (2007).  Plaintiff concedes this point, limiting his "Paystub Class" to the time period "from December 2, 2018 through present." Plaintiff's last wage statement is dated November 23, 2018.  Simon Depo. 226:24-227:8, Exh. 39. Therefore, lacking his own individual claim, it necessarily follows that Plaintiff is "not adequate" to represent the proposed class. *See, e.g., Lindblom*

---

[5] Plaintiff contends that the parenthetical "(or, if you don't have online access at work or home, you can request a paper voucher)" in Wells Fargo's handbook means that "only" those employees may do so, Mot. 8-9, 11, but that word is conspicuously absent, that is not how it is implemented, and the drafting clearly recognizes the reality that those with TeamWorks access would opt to print their own as easiest, while those without such access may need direction. *Cf. Salazar, supra*, 2021 WL 1608223, at *5 (published statement that breaks "are assigned on the Break and Lunch Schedule" did not establish that "schedule was the only means to obtain a required break).  Contrary to common sense, Plaintiff suggests that, rather than simply providing a pay voucher, Wells Fargo's human resources would first question an employee about her access to TeamWorks and then deny the request if the employee confirmed she had access.  No evidence supports that.

*v. Santander Consumer USA, Inc.*, 2018 WL 573356, at *4-5 (E.D. Cal. Jan. 26, 2018) ("A bedrock requirement running through the Rule 23(a) framework is that class certification **is not appropriate** unless one or more class representatives actually belong to the proposed class"; "courts . . . routinely preclude potential time-barred plaintiffs from serving as class representatives").

Furthermore, Plaintiff is not an adequate representative because he admits that he does not recall if he ever wanted a paper pay voucher and understood that, if he wanted a paper pay voucher, he could request one.  Simon Depo. 164:13-165:2; *see generally Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) ("A class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members") (citation omitted).[6]

**C.     Plaintiff Failed to Produce any Evidence of Actual Injury as Required by Section 226(e) or "Common Proof" of Injury.**

Recovery of statutory penalties under Section 226(e) requires injury.  Cal. Lab. C. § 226(e)(1) ("An employee *suffering injury* as a result of a knowing and intentional failure by the employer to comply with subdivision (a) . . . ."); *Maldonado v. Epsilon Plastics, Inc.,* 22 Cal. App. 5th 1308, 1335 (2018) (violations of sec. 226(a) "alone do not justify penalties; the plaintiffs must establish injury flowing from the [violations]").[7]  While Section 226(e)(2) contains a "deemed injured" provision, it is not available to Plaintiff because it applies only (i) when no pay voucher is provided, or (ii) to claims alleging missing or inaccurate information

---

[6] Plaintiff is also an inadequate class representative for a third, independent reason – his claim is barred by the *Hernandez* class action settlement, in which Plaintiff was a class member.  RJN, Exh. A; Myette Decl. ¶¶ 6-7, Exh. A; *see Adam Bros. Farming, Inc. v. Cnty. Of Santa Barbara*, 604 F. 3d 1142, 1148-49 (9th Cir. 2010) ("California's res judicata rule applies when" the prior action involved same issue, same parties, and final judgment on the merits); *accord Ross v. Chipotle Mexican Grill, Inc.*, 2016 WL 7634445, at *4 (S.D. Cal. Aug. 8, 2016) ("For purposes of res judicata, a settlement in a class action lawsuit is treated as an adjudication on the merits.") (citing *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 585 (2010)).

[7] Federal courts are in accord, including this Court.  *See, e.g., Martinez v. Hub Group Trucking, Inc.,* 2021 WL 937671, at *6 (C.D. Cal. Jan. 11, 2021); *Johnson v. Estension Logistics, LLC*, 2020 WL 8993120, *5 (C.D. Cal. Dec. 28, 2020) (same).

1   required by subdivision (a).  *See* Cal. Lab. C. § 226(e)(2)(A),(B).  Neither is

2   Plaintiff's claim.

3       Plaintiff's Motion fails to provide ***any*** argument or evidence that he or any

4   putative class member was *injured* by receiving an electronic pay voucher (that

5   could be printed) and the alleged inability to obtain a paper one.  *See* Mot. 7-9, 11,

6   14, 19-20, 21.  Indeed, none of Plaintiff's supporting declarations even address the

7   subject of pay vouchers.  Obviously, the reality is there were no injuries and even

8   Plaintiff himself testified to no injury – he had access to pay vouchers online,

9   printed them at work, and never wanted to receive a paper voucher.  Simon Depo.

10  160:14-21, 162:16-163:8, 164:13-18.  *See Villacres v. ABM Industries, Inc.*, 2009

11  WL 111686, at *3 (C.D. Cal. Jan. 14, 2009) (denying certification of plaintiff's 226

12  claim because he failed to present any facts showing actual injury, either to himself

13  or to the class), *aff'd ,* 384 Fed. Appx. 626 (9th Cir. 2010).

14      Not surprisingly, Plaintiff's declarants affirmed this lack of injury when

15  deposed.  *See* Speech Depo. 98:6-100:14 (never wanted a paper check because

16  direct deposit was more convenient, accessed her pay vouchers through

17  TeamWorks at work and at home, printed paper copies of her vouchers, and knew

18  she could print them for free at work); Sanchez Depo. 160:1-162:1 (has reviewed

19  and printed her pay vouchers at work, without charge, and does not want a paper

20  voucher); *see also* Bouguefa Depo. 177:15-178:2 (did not want to be paid with

21  paper check); Mai Depo. 70:4-7 (same); Zamora Depo. 107.05-108:6 (preferred

22  direct deposit to paper check; when there was a time she wanted a paper copy of her

23  pay voucher, she was able to find it on TeamWorks and print it at work).

24      Accordingly, because Plaintiff has failed to provide any evidence that, while

25  receiving electronic wage statements putative class members could view and print

26  any time, Wells Fargo nevertheless injured them by its *alleged* failure to allow

27  those paid via direct deposit to obtain a paper pay voucher, certification must be

28  denied.  *See Villacres v. ABM Indus. Inc.,* 384 Fed. Appx. at 627 (affirming denial

493470

20

WELLS FARGO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

of certification based on failure to demonstrate that either he or any member of his proposed class were injured by the "allegedly improper pay stubs"); *Apodaca v. Costco Wholesale Corp.*, 2013 WL 12171960, at *3 (C.D. Cal. Jul. 3 2013) ("If Apodaca's proposed class were certified, the Court would be mired in trials to determine whether an employee who received a wage statement . . . had a cognizable injury under § 226."); *Delgado v. New Albertson's, Inc.*, 2009 WL 10670628, at *9-10 (C.D. Cal. Dec. 15, 2009).[8]

Furthermore, there are individualized issues as to whether any putative class member interpreted the policy in the way that Plaintiff theorizes, particularly since Plaintiff has not provided even one declaration that any putative class member actually did so.  In fact, all of the evidence before this Court is to the contrary.

## V.   **PLAINTIFF'S THREE SECTION 226.7-BASED CLAIMS SHOULD NOT BE CERTIFIED**

Plaintiff seeks certification of the following three, 226.7-based classes, none of which should be certified:

(1) **Meal & Rest Period Premium Class**: Plaintiff alleges that Wells Fargo paid meal and rest premiums at the wrong rate of pay without ever establishing that any underlying violation of Section 226.7 actually occurred, per *Kirby*;

(2) **Meal Period Policy Class**: Plaintiff alleges (disingenuously) that Wells Fargo's timekeeping system does not record an interrupted meal break;

(3) **Rest Period Policy Class**: Plaintiff alleges that, due to the features of Wells Fargo's timekeeping system, "an employee who received a late,

---

[8] *Evans v. Walmart Stores, Inc.*, 2019 WL 7169791 (C.D. Cal. Nov. 25. 2019), the case to which Plaintiff cites for the proposition that "another district court in this district certified a materially identical claim," is not instructive for two reasons. First, that court found that none of the "three potential methods of payment" Wal-Mart offered included receiving a paper wage statement.  *Id.* at *9.  Wells Fargo indisputably does.  Second, the court in *Evans* was not asked to consider, and therefore did not rule on, whether the lack of common proof of injury by the alleged non-provision of paper vouchers precludes certification.

493470

short, or interrupted rest break would be *unlikely* to record in the system that this occurred" and, therefore, would not receive premium pay.

A.   **Wells Fargo Maintains a Compliant Meal and Rest Break Policy and Generously Pays Premiums for Employees' Self-Reported Noncompliant Meal and Rest Breaks "No Questions Asked".**

At all relevant times, Wells Fargo has maintained a written meal and rest period policy that fully complies with California law *and Plaintiff does not contend otherwise.*  The policy is available to employees in various ways, including Wells Fargo's intranet TeamWorks, trainings, and it is physically posted in every branch. Tautkus Depo. 91:20-92:19, Exh. 13; Fondungallah Decl. ¶ 3, Ex. A.

All employees are required to accurately record all time worked, including any time worked during meal periods, in Wells Fargo's online timekeeping system, "Time Tracker."  Time Tracker allows employees to add as many time-in/out fields as they need to accurately record their work time.  *See id.* at ¶¶ 4-6, Exhs. B, C.

Once an employee enters his or her time and clicks "save," Time Tracker automatically detects any shifts with a ***potential***, noncompliant meal period (late, missed, or short, including if the meal period was late or short due to an interruption). Fondungallah Decl. ¶ 7.  Time Tracker then prompts the employee to report if the employee had an opportunity to take a compliant meal period or not.  If the employee selects "no opportunity," Wells Fargo includes an hour of premium pay in the employee's next paycheck without questioning or investigating the validity of the self-report.  *See id.* at ¶¶ 8, 11.  Employees who do not take a rest break that complies with Wells Fargo's policy are instructed to disclose the noncompliant break and report if they had an opportunity to take a compliant rest break or not.  Employees reporting "no opportunity" receive an additional hour of pay in their next paycheck without any further validation.  *See id.* at ¶¶ 9-11.

At the end of the week, when employees click "Complete" on Time Tracker, they confirm, among other things, including the accuracy of all time submitted:  "I

493470

understand that information on state-specific requirements for meal and rest periods is available online on Teamworks." *See id.* at ¶ 12; Simon Depo. 70:17-71:16.

Notably, during the period from December 2, 2015, to March 31, 2021, 7,120 employees (constituting 80.8% of all putative class members) reported at least one noncompliant meal period, resulting in Wells Fargo paying $5,551,794 in meal period premiums for 231,422 reportedly noncompliant meal periods (an average of 32.5 per person).  During this same time, 4,149 employees (constituting 47.1% of all putative class members) reported at least one noncompliant rest break, resulting in Wells Fargo paying $2,069,623 in rest period premiums for 87,427 reportedly noncompliant rest breaks (an average of 21 per person).  Reck Decl. ¶ 8.  This data establishes that Wells Fargo employees are aware of the system and utilize it.

## B. <u>Plaintiff's Meal and Rest Break Premium Underpayment Class Cannot Be Certified for Two Reasons</u>.

Plaintiff contends that Section 226.7(c)'s "regular rate of compensation" means the same thing as Section 510(a)'s "regular rate of pay" (for overtime wages), which incorporates nondiscretionary incentive pay into the calculation of overtime.  Because Wells Fargo pays meal and rest premiums based on employees' base hourly rate and does not incorporate nondiscretionary incentive pay, Plaintiff alleges that Wells Fargo *under*paid putative class members.  Plaintiff therefore seeks to certify a class based solely on the adequacy of the premium payments without making any showing or presenting common proof that Wells Fargo failed to provide the meal and rest periods on which the premiums were paid.[9]

---

[9] While Wells Fargo will not spend time here on the merits question, it is notable that Plaintiff neglects to mention that this issue is currently pending before the California Supreme Court after a California appellate court held that paying premium pay at the hourly rate (as Wells Fargo does) is proper.  *Ferra v. Loews Hollywood Hotel, LLC*, 40 Cal. App. 5th 1239, 1246 (2019), *rev. granted* 456 P. 3d 415 (2020).  Plaintiff also neglects to mention that his counsel previously litigated this issue against Wells Fargo and lost.  *See* RJN Exh. C (*Smith v. Wells Fargo*, Los Angeles Super. Ct. Case No. BC487731) (holding that Wells Fargo prevailed under a "plain meaning" analysis of section 226.7, and that its calculation is consistent with legislative history and the purpose of the statute).

493470

To demonstrate, Plaintiff reported that he had "no opportunity" to take a compliant meal break on May 12, 2018.  *See* Fondungallah Decl. ¶ 16, Exh. E. Wells Fargo paid him a premium of $19.23 (his base hourly rate) in his next paycheck.  *See id.* ¶ 18, Exh. F.  Later, Wells Fargo paid him a quarterly bonus of $225.77 for the second quarter, during which he worked 390.5 hours.  *See id.*  If Plaintiff prevails, he will be entitled to an additional payment for his May 12 self-report in the sum of **58 cents** ($225.77 divided by 390.5 hours).

### 1.   Plaintiff Is Not a Member of His Own Proposed Class.

First, Plaintiff did not receive a single rest period premium payment during the putative class period.  Fondungallah Decl. ¶¶ 16, 18, Exhs. E, F.

Second, Plaintiff settled his meal period premium pay claims as a class member in *Sylvia Hernandez v. Wells Fargo Bank, N.A.*, Santa Clara County Superior Court, Case No. 16CV299319.  Plaintiff did not opt out of the class, received a payment, and the settlement class period includes the entire time period that is covered by the present putative class action.  *See* RJN, Exh. A ¶¶ 11, 14; Myette Decl. ¶¶ 6-7, Exh. A; Simon Depo. 215:18-216:15.  Thus, res judicata bars him from litigating his meal period premium claims in this action.  See fn. 7, *supra*.

Accordingly, Plaintiff does not have any claim for underpaid meal and rest premiums and does not have the same alleged injuries as other class members.  *See E. Texas Motor Freight System Inc. v. Rodriguez*, 431 U.S. 395, 403-04 (1977) (plaintiffs "were not members of the class … they purported to represent" because they did not suffer injury as a result of the alleged unlawful acts, making them "simply not eligible to represent a class of persons who allegedly suffer injury").

### 2.   Liability Requires a Threshold Finding that Wells Fargo Failed to Provide Meal and Rest Periods and, on that Issue, Individual Issues Predominate.

As the California Supreme Court explained more than nine years ago, the "'additional hour of pay' provided for in subdivision [(c)] is the legal remedy for a

violation of subdivision [(b)]," which is the "failure to provide required meal and rest breaks." *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1256-57 (2012). More importantly, "an employer's failure to provide an additional hour of pay [or, in this case, alleged underpayment of an additional hour of pay] ***does not form part of a section 226.7 violation***." *Id.* at 1256 (emphasis added). In fact, "whether or not [the additional hour of pay] has been paid" is, according to the California Supreme Court, **"*irrelevant to whether section 226.7 was violated*.**" *Id.* (emphasis added).

Accordingly, per *Kirby*, the Court cannot even begin to determine whether Wells Fargo underpaid the employees to whom it voluntarily paid meal and rest period premiums (based on their untested self-reports) until it first makes the foundational determination that Wells Fargo owed the meal and rest premiums in the first place. In other words, the inquiry, "did Wells Fargo pay meal and rest premiums at the proper rate," is secondary to the primary inquiry, "did Wells Fargo fail to provide the meal or rest breaks for which the premiums were paid?"

This, of course, leads Plaintiff straight into his *Brinker* conundrum. In *Brinker*, the California Supreme Court found the plaintiff's rest period class appropriate for certification because the employer's rest period policy was unlawful on its face. *See id.* at 1032-33. Conversely, the Court found certification of plaintiffs' off-the-clock claim improper because there was no unlawful policy and, hence, no common proof of wrongdoing. As a result, determining liability would require an "employee-by-employee" inquiry. *Id.* at 1051-52. In the present matter, that Wells Fargo's meal and rest period policies comply with California law is not in dispute. Accordingly, determining liability as to each putative class member's self-reported "violations" would necessarily require the very employee-by-employee, shift-by-shift inquiry that led *Brinker* to uphold denial of certification. *See id.* at 1052; *see also Roth v. CHA Hollywood Med. Ctr., L.P.*, 2013 WL 5775129, at *5 (C.D. Cal. Oct. 25, 2013) (certifying meal period subclass created

"an unworkable, cart-before-the-horse problem" because determining class membership required "first making a legal determination of whether [Defendant] 'provided' each putative class member with proper meal breaks").

Notably, in *Torres v. Wells Fargo Bank, N.A.*, 2017 WL 128050 (C.D. Cal. Mar. 21, 2017), a different plaintiff sought certification based on this exact same claim against Wells Fargo and a sister court in the Central District resolved it in Wells Fargo's favor. *Id.* at *2. Citing to the California Supreme Court's holding in *Kirby*, the District Court held that the plaintiff's proposed meal period premium underpayment class failed "to identify a common question of liability." *Id.* at *3 (quoting both *Kirby*, 53 Cal. 4th at 1256-57 and *Dukes*, 564 U.S. at 350). The court explained that "***membership in a class that is entitled to wage premiums under Section 226.7 necessarily requires an individualized inquiry into the underlying question of Defendant's liability as to every class member***." *Id.* (citing *Roth, supra,* 2013 WL 5775129, at *5) (emphasis added). Further, the "necessity of an individualized inquiry into Defendant's failure to provide a meal break undermine[d] the predominance requirement of Rule 23(b)(3)." *Id.* at *4. Because the plaintiff in *Torres*, like Plaintiff here, did not argue that Wells Fargo had a "general policy that prevents employees from taking meal breaks," "[e]ach class member's recovery therefore depends on factual questions particular to that individual's failure to take a meal period and the reasons for that failure." *Id.* at *5. Notably, nothing has changed in the last four years that would be grounds for this Court to reach a different conclusion.

### 3. The 2020 Trial of *Hamideh v. Wells Fargo* Demonstrates the Predominance of Individual Issues.

The recent trial of *Hamideh v. Wells Fargo Bank, N.A.*, San Diego Superior Court, Case No. 37-2017-00045253-CU-OE-CTL, provides the Court with two case studies where class member testimony on direct and cross examination, coupled with other witnesses' testimony, underscores the predominance of individual issues.

493470

In *Hamideh*, two plaintiffs, Hamideh and Abdolrasoul, filed claims under the Private Attorneys General Act ("PAGA"), Labor Code Section 2699 *et seq.*  The plaintiffs contended that employees' self-reports and the corresponding premiums Wells Fargo paid established violations of section 226.7 for which PAGA penalties could be assessed.  The matter proceeded to trial, where the plaintiffs were required to prove that they were denied the opportunity to take a compliant meal period for each premium payment they received.  They failed to do so and their claims were dismissed.  *See* RJN, Exh. B (Statement of Decision), at p. 2.

Critically, the plaintiffs were represented by counsel and, at trial, were subject to cross-examination as to the instances in which they self-reported non-compliant meal periods.  Wells Fargo, likewise, presented other witness testimony and records rebutting their testimony.  The trial court found that neither plaintiff proffered credible testimony about the instances in which they selected "no opportunity to take a compliant meal period" in Time Tracker.  *Id.* at pp. 5-6 (¶¶ 15, 22).  Conversely, the trial court found persuasive the testimony of Wells Fargo's witnesses as well as the Time Tracker data of the plaintiffs' co-workers for the same shifts, all of whom recorded compliant meal periods or reported having the opportunity to take compliant meal periods.  *Id.* at pp. 6-7 (¶¶ 18, 19, 25, 26).

*Hamideh* demonstrates that individual issues would unquestionably predominate in any action in which Plaintiff seeks classwide recovery for the alleged underpayment of premiums resulting from self-reported meal and rest period violations.  It also demonstrates why Plaintiff and putative class members are not entitled to a presumption of liability based on the mere fact that Wells Fargo paid meal and rest period premiums to those employees.  *See Kimoto v. McDonald's Corps.*, 2008 WL 4690536, at *6 (C.D. Cal. Aug. 19, 2008) (court could not "assume that the employees accurately recorded the timing of their breaks"); *see also Torres*, 2017 WL 1380505, at *5 ("The fact that [Wells Fargo] has a timekeeping system where [employees] self-report that they 'did not have an

WELLS FARGO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

493470

opportunity' to take a compliant meal break *does not establish a violation of Section 226.7*.") (emphasis added).

While the two plaintiffs lost in *Hamideh*, Wells Fargo is not providing this example to predict how any other putative class members' claims will resolve but rather to show that there will not be a "common" resolution for all.

### C.   Plaintiff's "Interrupted" Meal Period Argument Is a Red Herring and Cannot Salvage His Meal Period Policy Class.

Plaintiff's argument that a class should be certified because Time Tracker "does not record whether a meal break was interrupted" is a red herring for four reasons. *First and foremost*, it is based on a false premise. Employees are told to record their time accurately and they are able to record an interrupted meal period. If they do, and what they record is non-compliant, the prompts will come up and, if they select that they were not provided the opportunity to take a compliant meal period, they will receive premium pay. Tautkus Depo. 72:10-22. There is no evidence before this Court to the contrary.

*Second,* because Wells Fargo policy requires employees to record their time accurately, individualized issues predominate as to whether any specific employee recorded their time worked accurately (particularly where employees confirm the accuracy of the time they enter every week) and, if not, why not. Indeed, the California Supreme Court has held that the presumption is that employees are not working while clocked out and to overcome that presumption on Plaintiff's "interrupted theory" is inherently individualized. *Brinker*, 53 Cal. 4th at 1051.

*Third*, an interrupted meal period is not in and of itself a violation – it is only a *potential* violation if the interruption causes the meal period to be short or late. Where, as here, many meal periods are an hour long, an interruption rarely will prevent the statutorily required 30-minute meal period.[10]

---

[10] Even if an interruption prevented 30 continuous minutes, it is not a violation if the employee had the opportunity to take 30 continuous minutes but chose not to.

493470

*Fourth*, the Time Tracker prompt is not required by law, and neither is any requirement to poll employees about possible meal period interruptions.

### 1.   Plaintiff Cannot Get around *Brinker* by Focusing on a Perceived Deficiency in the Self-Reporting System.

The reality is that the class Plaintiff seeks to certify is a disingenuous attempt to avoid Plaintiff's *Brinker* problem, *i.e.*, that Wells Fargo has a meal period policy that is "on all fours" with California law and Plaintiff cannot produce any common proof that Wells Fargo is not providing compliant meal periods to putative class members. In *Brinker*, the California Supreme Court established important principles relevant to certifying claims under Section 226.7. First, an employer's obligation to provide a meal period is satisfied if the employer "relieves its employees of all duty, relinquishes control over their activities, and permits them a reasonable opportunity to take an uninterrupted 30-minute break." *Brinker*, 53 Cal. 4th at 1040. Second, in the absence of an unlawful companywide policy, proof of liability would have to proceed "in an employee-by-employee fashion," rendering certification inappropriate. *Id.* at 1052.

In short, Plaintiff knows he cannot certify a traditional 226.7 class so he attempts an end-run around *Brinker* by attacking the adequacy of Wells Fargo's self-reporting system (which is not required by law) on a contrived claim. Plaintiff cannot certify his proposed class because liability can only be determined "in an employee-by-employee fashion" to demonstrate what meal periods were interrupted, whether they were reported in Time Tracker, and whether they resulted in a violation of section 226.7. *See Brinker,* 53 Cal. 4th at 1052.

### 2.   Federal Courts Agree, and Putative Class Member Testimony Affirms, that Individual Issues regarding Alleged Interrupted Meal Periods Predominate over Common Ones.

As demonstrated, an "interrupted" meal period, legally and practically, is relevant only to those employees who are not accurately reporting their time

worked in contravention of Wells Fargo policy.  But, as the California Supreme Court recognizes, if an employee is not "clocked in," Wells Fargo is entitled to a presumption that the employee is not working, *and the burden is on Plaintiff and putative class members to present evidence rebutting that presumption.*  *Brinker*, 53 Cal. 4th at 1051.  Consequently, federal courts recognize that threshold questions would remain:  Were meal periods actually interrupted and, if so, was Wells Fargo responsible?  *See Gonzalez v. OfficeMax N.A.*, 2012 WL 5473764, at * (C.D. Cal. Nov. 5. 2012); *Alcantar v. Hobart Serv.*, 800 F. 3d 1047, 1054 (9th Cir. 2015) (class certification properly denied because questions regarding why employees missed their breaks would predominate over questions common to the class).

Moreover, because Wells Fargo permits many employees to take 60-minute-lunches,[11] a third threshold question arises:  Did an interruption actually result in a noncompliant meal period?  For example, if an interruption occurs 33 minutes into the lunch, there would be no violation; likewise, if an interruption occurs ten minutes into the lunch, and lasts for five minutes, after which the employee resumes lunch for at least 30 minutes (and it is timely), there would be no violation.  Even if that did not happen but the employee was *able to do so*, that also would not be a violation.  *See Salazar,* 2021 WL 1608223, at *9 ("Simply alleging a uniform practice is not enough; rather, a class plaintiff 'must present substantial evidence that proving both the existence of the defendant's uniform policy or practice and the alleged illegal effects of that policy or practice could be accomplished efficiently and manageably within a class setting.'") (citation omitted).

Putative class member evidence affirms that individual questions predominate.  Plaintiff and *four* other putative class members (out of *6,000-plus*) allege occasionally experiencing "interrupted" meal periods due to work, but are silent as to whether the interruptions resulted in noncompliant meal periods and, if

---

[11] *See, e.g.,* Simon Depo. 46:25-47:21; Speech Depo. 66:20-67:8; Sebhatu Decl. ¶ 4; Hernandez Decl. ¶ 4.

493470

so, whether they were able to report them in Time Tracker.  *See* Simon Decl. ¶¶ 9-11; Speech Decl. ¶ 8; Mai Decl. ¶ 7; Zamora Decl. ¶ 8; Bouguefa Decl. ¶ 7.[12]  At deposition, these declarants spoke to why their declarations were silent in this regard.  *See, e.g.,* Speech Depo. 127:21-131:18 (interrupted lunches at only some branches and was always able to complete her lunch break after the interruption); Sanchez Depo. 126:18-127:14 (lunch never interrupted at Azusa branch because went home); Zamora Depo. 79:13-80:7 (interrupted lunches at the Azusa branch but was able to complete her lunches afterwards); Bouguefa Depo. 76:12-78:6 (lunches not interrupted before moving branches because she went home; after moving, her lunches were interrupted but she was always able to complete her lunches after the interruption).  Meanwhile, other putative class members, some of whom worked side by side with Plaintiff, either did not experience interruptions to their meal breaks or affirmed that, when their meal periods were interrupted, they accurately recorded their time in Time Tracker and were able to complete their breaks at a later time (but starting no later than the end of their fifth hour of work).  *See* Taheri Decl. ¶ 7; Sebhatu Decl. ¶ 8; Hernandez Decl. ¶ 8; Garcia Decl. ¶ 8.

Thus, certifying Plaintiff's proposed class would require an examination of every shift for which a meal period premium was *not* paid to determine (a) whether it was interrupted, (b) why it was interrupted, and (c) whether the interruption resulted in a noncompliant meal period.  As *Brinker* recognizes, such questions are individual in nature, predominate over common ones, and render the claim improper for class certification.  *Brinker*, 53 Cal. 4th at 1052.

### D.   <u>Plaintiff's Rest Period Policy Class Is Based on a Similar Time-Tracker-Related Red Herring Theory and Cannot Be Certified</u>.

Plaintiff seeks to certify a Rest Period Policy class, not on the grounds that Wells Fargo's policy is unlawful or that there is a uniform practice of not

---

[12] All of the individuals who submitted declarations in support of Plaintiff's Motion have received at least one premium payment.  *See* Reck Decl., ¶ 9.

493470

authorizing and permitting rest breaks, but on nothing more than his *suspicion* that employees were not self-reporting rest breaks that were "late, short, or interrupted"[13] since Wells Fargo's timekeeping system allegedly did not explain what a compliant rest break was.  Mot. 8, 16 ("whether Wells Fargo can maintain a system for paying rest period premiums that only accounts for rest periods that were missed entirely, as opposed to late, short, or interrupted rest breaks").  As with his other 226.7 classes, Plaintiff's Rest Period Policy Class focuses exclusively on the question of whether, because of a perceived deficiency in its timekeeping system, Wells Fargo has paid all premiums owed without ever establishing that the premiums are actually owed at all (*i.e.,* because Wells Fargo failed to authorize and permit the underlying rest break).  Plaintiff cannot certify this class.

### 1. Plaintiff Does Not Attack the Lawfulness of Wells Fargo's Rest Period Policy (Nor Could He) and Instead Improperly Focuses on Wells Fargo's "System for Paying Premiums."

First and foremost, Wells Fargo maintains, as it has for the entirety of the putative class period and beyond, a written rest period policy that authorizes and permits employees to take paid, ten-minute rest breaks in accordance with California law.  Fondungallah Decl. ¶ 3, Exh. A.  Plaintiff does not contend that Wells Fargo's rest period policy is itself unlawful or present any evidence of a uniform, companywide practice of not providing rest breaks as required by law.

Instead, Plaintiff challenges the adequacy of Wells Fargo's "system for paying rest period premiums."  Mot. 16.  However, as the California Supreme

---

[13]Plaintiff's theory is nothing more than semantics.  Plaintiff offers no definition of a "late" break and the regulations establish only that, "insofar as practicable," rest breaks "shall be in the middle of each work period."  Cal. Code Regs. tit. 8, § 11040(12)(A).  "Insofar as practicable" is understood to mean that a rest break required by business necessity to be taken earlier or later than the middle of a work period is permissible.  *See, e.g.,* DLSE Op. L. 2002.02.22-2 ("Obviously, the language contemplates that the IWC foresaw situations where the rest period could not practicably be authorized in the middle of the work period . . . .").  Furthermore, a "short" or "interrupted" break is, by definition, not a 10-minute break and, therefore, indistinguishable from one that is "missed."  *See* Simon Depo. 122:2-6.

Court made clear, a premium is simply the "legal remedy" for the "failure to provide required . . . rest breaks," such that, "whether or not it has been paid is irrelevant to whether section 226.7 was violated." *Kirby*, 53 Cal. 4th at 1256-57. Yet, that is precisely what Plaintiff asks this Court to do:  certify a class to decide whether Wells Fargo is adequately paying rest period premiums without ever establishing that Wells Fargo failed to authorize and permit compliant rest breaks in the first place.  Consequently, on this ground alone, certification is improper.

### 2.      In the Absence of an Unlawful Policy, Individual Issues Predominate.

Additionally, *Brinker* and its progeny make clear that, without an unlawful policy, certification is improper because individual issues predominate.  *Brinker*, 53 Cal. 4th at 1033.  Without an unlawful policy, proof of liability "would have . . . to continue in an employee-by-employee fashion. . . ." *Id.* at 1052.

Likewise, proving liability on Plaintiff's Rest Period Policy Class claims would require an employee-by-employee inquiry to determine (1) which employees, and (2) for what shifts, experienced a short or interrupted rest break, that (3) they failed to report in Time Tracker because (4) Time Tracker's prompts failed to explain what constituted a compliant rest break, (5) why they experienced a short or interrupted rest break in the first place, and (6) whether they had the opportunity for a compliant rest break.

### 3.      Attacking Wells Fargo's System for Self-Reporting Noncompliant Rest Breaks Is a Red Herring.

Plaintiff's entire theory of liability is that, because Time Tracker allegedly does not explain what a compliant rest break is, it is "unlikely" that employees reported all noncompliant rest breaks that were short or interrupted.  Mot. 10. Specifically, Plaintiff argues that employees who click on a link in Time Tracker for the express purpose of reporting a noncompliant rest break are presented with a prompt that gives them the simple choice to report that they "had an opportunity" or

"had no opportunity" to take a compliant rest break.  Because this prompt did not explain what constitutes a compliant rest break (including that it must be ten minutes in length and uninterrupted), employees *may not* have reported short or interrupted rest breaks.  In other words, employees clicked on the link to report a noncompliant rest break, received and read the prompt, and, *despite being cognizant of their rest break claim* (because they had clicked on the link to report a noncompliant break in the first place), changed their mind because they were not able to tell from the prompt if they had a noncompliant rest break.

Setting aside the fact that the data do not support Plaintiff's contention and that putative class members are thoroughly educated and informed about their rights to ten-minute rest breaks for every four hours worked or major fraction thereof[14], the "inadequate Time Tracker prompt" argument is another red herring.  It does not establish or even suggest that any rest period was not provided, which, again, is the only relevant issue with respect to rest break violations.  *See Kirby*, 53 Cal. 4th at 1256-57.  It does not reflect any employee's actual experience of not receiving a compliant rest break, it only suggests that someone *might not* have understood to report a noncompliant break.  **But what an employee did or did not understand with respect to reporting rest break violations in Time Tracker, by its very nature, requires an individualized inquiry and cannot be determined by any sort of common proof.**  *See, e.g.* Simon Depo. 122:2-11 (acknowledging that, if his rest break was **interrupted** and he did not get another one, he considered the rest break **missed** and he was aware he could indicate in Time Tracker that he was

---

[14] Wells Fargo's rest period policy is posted in a visible location in every branch, included in trainings, and accessible on TeamWorks.  Moreover, when employees submit their time at the conclusion of each week, they receive a prompt reminding them where they can view Wells Fargo's meal and rest period policies.  To say that putative class members failed to report rest break violations on the basis of the failure of the prompt in Time Tracker to explain what a compliant rest break means ignores all the other resources Wells Fargo employs to educate employees. *Salazar,* 2021 WL 1608223, at *7 (legal postings at each worksite, corporate communications, and training on policy evidenced company's effort to comply with law, rendering individual testimony necessary to "determine what occurred").

WELLS FARGO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1   not provided the opportunity to take a compliant rest break); Bouguefa Depo.

2   205:18-21 (since breaks were 15 minutes long, most of the time she received at

3   least 10 uninterrupted minutes for the breaks that were interrupted).

4   **4.  Putative Class Member Evidence Demonstrates that**

5   **Individual Issues Predominate Over Common Ones.**

6       Significantly, Plaintiff did not produce one iota of evidence to support his

7   claim that any putative class member experienced an interrupted or short rest break

8   that he or she failed to report in Time Tracker because of the prompt.  Not one of

9   the declarations submitted in support of his Motion made such an averment.

10  Accordingly, Plaintiff has not satisfied his evidentiary burden under Rule 23(a).

11  *See Briseno v. ConAgra Foods, Inc.*, 844 F. 3d 1121, 1131 (9th Cir. 2017).

12      But even if they had, it still would not matter.  As discussed herein,

13  employees' self-reported violations are not proof that violations actually occurred.

14  Moreover, putative class members affirm their understanding of their right to an

15  uninterrupted rest break of at least ten minutes, their ability to restart any rest break

16  interrupted by work, and their right to report a noncompliant rest break in Time

17  Tracker.  *See, e.g.,* Simon Depo. 105:20-106:2, 122:2-15; Speech Depo. 74:16-

18  75:4, Zamora Depo. 71:8-12, Taheri Decl. ¶¶ 5, 7, 9, 19; Sebhatu Decl. ¶¶ 4, 5, 16;

19  Hernandez Decl. ¶¶ 4, 5, 7, 17; Garcia Decl. ¶¶ 4, 5, 7, 19.

20      Accordingly, determining liability would require examining each shift for

21  which a rest period premium was *not* paid and asking the threshold questions of

22  whether a rest break was short or interrupted and why, and/or whether there was an

23  opportunity for a compliant break.  These are individual determinations not capable

24  of common proof and would predominate over any common issues.  Consequently,

25  certification must be denied.  *See Alcantar*, 800 F. 3d at 1054 (affirming denial of

26  certification "because questions as to why [employees] missed their meal and rest

27  breaks would predominate over question[s] common to the class").

28

493470

WELLS FARGO'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

1

## VI.    **THE PROPOSED CLASSES MUST BE NARROWED**

To the extent the Court finds that any of Plaintiff's five proposed classes are appropriate for certification, they must be narrowed to exclude (1) any employees who entered into binding arbitration agreements containing a class action waiver, which includes anyone hired on or after December 11, 2015, and, depending on the class(es) certified, (2) any class members whose claims were released in whole or in part by the *Alexander*, *Richard/Ramirez*, and/or *Hernandez* class settlements. *See* RJN, Exhs. A, D, E; Fongungallah Decl. ¶ 19, Exh. G; *Javine v. San Luis Ambulance Service, Inc.*, 2015 WL 12672090, at *8 (C.D. Cal. Jan. 13, 2015) (arbitration agreements prevent potential class members from participating in class action).

Additionally, Plaintiff did not sign the arbitration agreement, Fondungallah Decl. ¶ 21, as a result of which Plaintiff's claims are not typical. *See, e.g., Conde v. Open Door Marketing, LLC*, 223 F. Supp. 3d 949, 960 (N.D. Cal. Apr. 27, 2017) (plaintiffs not "personally affected by the arbitration agreements at issue because they [did not sign them]" and "lack the ability [even] to challenge the agreements …"); *Lim v. Helio, LLC*, 2012 WL 12884439, at *4 (C.D. Cal. Apr. 18, 2012) (denying class certification because plaintiff failed to sign arbitration agreement).

## VII.   **CONCLUSION**

For all of the foregoing reasons, Wells Fargo respectfully requests that the Court deny Plaintiff's Motion for Class Certification.


DATED:  May 17, 2021               KADING BRIGGS LLP

By: */s/THERESA A. KADING*
                      THERESA A. KADING

Attorneys for Defendant
WELLS FARGO BANK, N.A.