UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

Present: The Honorable      JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**          **(IN CHAMBERS) ORDER RE MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DKT. 61)**

I.     **Introduction**

On December 2, 2019, Caudley Simon ("Simon") brought this putative class action in the Los Angeles Superior Court against Wells Fargo Bank, N.A. ("Defendant") and several unnamed Defendants. Dkt. 1, Ex. A ("Complaint"). On January 8, 2020, the action was removed pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Dkt. 1.

The Complaint advances seven causes of action on behalf of all current and former non-exempt employees of Wells Fargo in the State of California from December 2, 2015, to the date of final judgment:

> (i) failure to provide meal periods, in violation of Cal. Lab. Code §§ 204, 223, 226.7, 512 and 1198;
> (ii) failure to provide rest periods, in violation of Cal. Lab. Code §§ 204, 223, 226.7 and 1198;
> (iii) failure to pay hourly and overtime wages, in violation of Cal. Lab. Code §§ 223, 510, 1194, 1197 and 1198;
> (iv) failure to indemnify, in violation of Cal. Lab. Code §§ 223 and 2802;
> (v) failure to provide accurate written wage statements, in violation of Cal. Lab. Code § 226;
> (vi) failure to timely pay all final wages, in violation of Cal. Lab. Code §§ 201–203; and
> (vii) unfair competition, in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

Dkt. 1-1 ¶¶ 45–147.

After engaging in mediation, the parties filed a Joint Notice of Settlement on October 20, 2021. Dkt. 49. On April 16, 2022, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement. Dkt. 61 (the "Motion"). The Motion was supported by the following: a memorandum (Dkt. 61 at 7–34); a declaration by Plaintiffs' counsel (the "Setareh Declaration" (Dkt. 62 at 1–27)); a copy of the settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

agreement (the "Settlement Agreement" (Dkt. 63-1))[1]; a stipulation to file a first amended complaint (the "Stipulation" (Dkt. 63-1 at 40–43)); the proposed First Amended Complaint (Dkt. 63-1 at 44–75); a proposed notice to class members (the "Proposed Notice" (Dkt. 63-1 at 89–98)); and submissions in support of a request for the award of attorney's fees to Plaintiffs' counsel.

Through the Motion, Plaintiffs seek the following:

  1.    Conditional certification of the Settlement Class;
  2.    Preliminary approval of the Settlement Agreement;
  3.    Appointment of Plaintiffs as class representatives;
  4.    Appointment of Setareh Law Group as class counsel;
  5.    Approval of the Proposed Notice;
  6.    Approval of the notice procedures set forth in the Settlement Agreement;
  7.    Appointment of Rust Consulting, Inc. as the settlement administrator;
  8.    Directing that notice be given to Settlement Class Members; and
  9.    Scheduling a final fairness hearing.

A hearing on the Motion was held on October 17, 2022. Dkt. 70.[2] On October 26, 2022, Plaintiffs' counsel filed supplemental briefing regarding the adequacy of Simon as the class representative. Dkt. 75. The matter was then deemed submitted. For the reasons stated in this Order, the Motion is **GRANTED**.

**II.    Stipulation Re Filing of First Amended Complaint**

On October 27, 2022, the parties filed an Amended Stipulation Re: Filing of First Amended Complaint (Dkt. 76 (the "Amended Stipulation")) and an amended proposed First Amended Complaint (*Id.*, Ex.1 (the "FAC")). Like the Stipulation filed concurrently with the Settlement Agreement, the Amended Stipulation proposes adding the same PAGA claims previously advanced by Simon in Los Angeles County Superior Court, Case No. 20STCV03229. The Amended Stipulation also proposes adding Natalia Zamora ("Zamora") as a class representative.

Based on a review of the Amended Stipulation, sufficient good cause has been shown for the requested relief. Therefore, the Stipulation is **APPROVED**. Plaintiffs may file the FAC in the form attached the Amended Stipulation as Exhibit 1. If the Settlement does not become final, the FAC will be null and void and the prior operative Complaint will be reinstated as the operative Complaint.

---

[1] Plaintiffs initially filed the settlement agreement as Exhibit 1 to the Setareh Declaration. *See* Dkt. 62-1. On April 21, 2022, Plaintiffs filed a Notice of Errata (Dkt. 63) identifying errors in that exhibit and attaching a true and corrected copy of the settlement agreement (Dkt. 63-1). The corrected copy is the operative settlement agreement.

[2] On October 14, 2022, Proposed Intervenor Josephine Easton filed a Motion to Intervene. Dkt. 68. The Motion to Intervene was fully briefed and taken under submission on December 8, 2022. Dkt. 87. On January 23, 2023, the parties filed a Stipulation to Withdraw Motion to Intervene. Dkt. 88. The Stipulation was approved on February 2, 2023. Dkt. 90.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

**III.** <u>**Factual Background**</u>

A.    The Parties

The FAC alleges that Simon is a citizen of California. FAC ¶ 4. It is alleged that Simon worked as a nonexempt, hourly employee for Defendant from approximately November 20, 2014, to November 24, 2018. FAC ¶ 18.

The FAC alleges that Zamora is a citizen of California. FAC ¶ 5. It is alleged that Zamora has worked as a nonexempt, hourly employee for Defendant from November 2011 to the present. FAC ¶ 19.

It is alleged that Defendant is a national banking organization doing business in California. FAC ¶ 6. It is a citizen of South Dakota. Dkt. 1 at 4.

B.    Allegations in the FAC

It is alleged that Defendant failed to provide Simon, Zamora and other non-exempt or hourly employees in California with meal periods of at least 30 minutes for each five-hour work period, as required by California law. FAC ¶ 30. It is further alleged that Defendant required Plaintiffs to end a meal period early whenever a customer entered a facility, and there were not enough other employees available to assist the customer. FAC ¶ 31.

It is further alleged that Plaintiffs and members of the putative class were not provided with rest periods of at least ten minutes for each four-hour work period. FAC ¶ 32. It is further alleged that Defendant imposed productivity requirements that required employees to work through rest periods in order to complete assignments on time. FAC ¶ 33.

As to both the meal period and rest break claims, the FAC alleges that Defendant had a policy of not scheduling breaks as part of each shift. FAC ¶¶ 30, 32. It is further alleged that Defendants "chronically understaff[ed]" each work shift, so that employees could not take a break; imposed work demands on employees that prevented them from taking breaks and finishing their work on time; and lacked a formal meal and rest period policy. FAC ¶¶ 30, 32. It is further alleged that Defendant failed to pay premium wages for noncompliant meal and rest periods. FAC ¶¶ 41, 42.

It is also alleged that Defendant unilaterally altered, or directed employees to alter, their timesheets to reflect meal periods that they did not actually receive and/or shave off time to limit overtime wages that were owed. FAC ¶ 24. It is further alleged that putative class members were not paid for time spent waiting to clock-in during the frequent crashes of the associated computer system. FAC ¶¶ 20–22, 25. It is alleged that as a result of these practices, Plaintiffs and the putative class performed off-the-clock work (FAC ¶¶ 26–29), and were not provided with accurate wage statements. FAC ¶¶ 39–43.

It is further alleged that Plaintiffs and the putative class were required to utilize their own cell phones and vehicles to perform job duties and to purchase and maintain their uniforms and were not reimbursed. FAC ¶¶ 34–38.

Finally, it is alleged that Defendant failed to properly pay employees their final paychecks at the time of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

termination and/or within 72 hours after resignation. FAC ¶¶ 45, 46.

**IV.   Summary of the Terms of the Settlement**

A.   Class Definition

The Settlement Agreement defines the Settlement Class as "the Branch Banking Settlement Class, the Meal & Rest Period Premium Settlement Class, and the Waiting Time Penalty Settlement Class." Dkt. 63-1 ¶ 8(k).

The Branch Banking Settlement Class is defined as "all employees of Wells Fargo who worked in a non-exempt position at a Wells Fargo bank branch in California from December 2, 2015, through the date Plaintiff files his motion for preliminary approval of the settlement (the '**Preliminary Approval Filing Date**')[3] who were hired prior to December 11, 2015, and (2) all employees of Wells Fargo who worked in a non-exempt position at a Wells Fargo bank branch in California from November 20, 2018, through the Preliminary Approval Filing Date who were hired or re-hired on or after December 11, 2015." Dkt 63-1 ¶ 8(c)(i). This class excludes "any person whose claim is entirely barred by the settlement in *Wells Fargo Bank Wage and Hour Cases*, Los Angeles County Superior Court, Case No. JCCP 4702 (the "**JCCP 4702 Settlement**")." *Id.* ¶ 8(c)(ii). The Class Period for this class is defined as the period from December 2, 2015, though the Preliminary Approval Filing Date. *Id.* ¶ 8(f)(i).

The Meal & Rest Period Premium Settlement Class is defined as "all California non-exempt employees who received a meal or rest period premium payment during a time period covered by applicable nondiscretionary incentive compensation from December 2, 2015, through December 31, 2021. *Id.* ¶ 8(d)(i). This class excludes "any person whose claim is entirely barred by the settlement in *Hernandez v. Wells Fargo Bank, N.A., et al.*, Santa Clara County Superior Court, Case No. 16CV299319 (the "*Hernandez* **Settlement**"). *Id.* ¶ 8(d)(ii). The Class Period for this class is defined as the period from December 2, 2015, through December 31, 2021. *Id.* ¶ 8(f)(ii).

The Waiting Time Penalty Settlement Class is defined as "all Meal & Rest Period Premium Class Members whose employment with Wells Fargo terminated on or after December 2, 2016." *Id.* ¶ 8(e). The Class Period for this class is defined as the period from December 2, 2016, through the Preliminary Approval Filing Date. *Id.* ¶ 8(f)(iii).

The Settlement Agreement also defines "PAGA Group Members" as all Settlement Class members who worked at Wells Fargo between November 20, 2018 and the Preliminary Approval Filing Date. *Id.* ¶ 8(h).

B.   Settlement of PAGA Claims

In a separate state court action, Simon sought civil penalties under the California Private Attorneys General Act of 2004 ("PAGA") for the same underlying wage and hour violations alleged in this matter. Dkt. 61 at 7. As a condition of the Settlement Agreement, Simon must successfully dismiss the PAGA action. Dkt. 63-1 ¶ 7(a). The Settlement Agreement also includes a release of the PAGA claims by

---

[3] The Motion was filed on April 16, 2022.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

Plaintiffs and the Settlement Class. *Id.* ¶ 36; Ex. B.

      C.     Payment to Putative Class Members

          1.    <u>Gross Settlement Amount</u>

The Settlement Agreement provides for the payment by Defendant of a "Gross Settlement Amount" of $6,500,000, plus the employer's share of any payroll taxes related to the settlement payments. *Id.* ¶ 12(a).

          2.    <u>Deductions from the Gross Settlement Amount</u>

             a)    Overview

The parties propose to allocate the Gross Settlement Amount as follows:

| Description of Amount | Amount | Percent |
|---|---|---|
| **Gross Settlement Amount** | **$6,500,000.00** | **100%** |
| Class Representative Service Payment Award | ($7,500.00) | 0.1% |
| Natalia Zamora Service Award | ($5,000.00) | <0.1% |
| Estimated Attorneys' Fees Award to Class Counsel | ($2,166,666.66) | 33.3% |
| Class Counsel's Litigation Costs | ($45,000.00) | 0.7% |
| Third Party Administrator Costs | ($69,667.00) | 1.1% |
| LWDA Payment | ($150,000.00) | 2.3% |
| **Net Settlement Amount** | **$4,056,166.34** | **62.4%** |

*See* Dkt. 63-1 ¶¶ 12–21.

The parties propose to allocate the Net Settlement Amount as follows:

| Description of Amount | Amount | Percent |
|---|---|---|
| **Net Settlement Amount** | **$4,056,166.34** | **100%** |
| PAGA Group Allocation | ($50,000.00) | 1.2% |
| Meal & Rest Period Settlement Class Allocation | ($1,600,000.00) | 39.4% |
| Waiting Time Penalty Settlement Class Allocation | ($500,000.00) | 12.3% |
| Branch Banking Settlement Class Allocation | ($1,906,166.34) | 47.0% |

*Id.* ¶ 13.

             b)    Incentive Awards for Class Representatives

The Settlement Agreement provides for an incentive award for Simon not to exceed $7500 to be paid from the Gross Settlement Fund. Settlement Agreement ¶ 16. The Settlement Agreement also provides for a service payment award for Zamora not to exceed $5000 to be paid from the Gross Settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

Fund. *Id.*[4]

      c)      Settlement Administration Costs

The Settlement Agreement provides that Rust Consulting, Inc. ("Rust") will act as the settlement administrator (the "Third Party Administrator"). Settlement Agreement ¶ 25. The Settlement Agreement also provides for an estimated payment of approximately $69,677 to the Third Party Administrator, to be paid from the Gross Settlement Fund. *Id.* ¶ 19.

      d)      Attorney's Fees

The Settlement Agreement provides that Plaintiffs' Counsel will request an award of attorney's fees and expenses from the Gross Settlement Fund, which shall not exceed $2,166,666.66. Settlement Agreement ¶ 18(a). This amount will cover all worked performed, and to be performed, in connection with this matter. The Settlement Agreement also provides that Plaintiffs' Counsel shall submit an application for reimbursement of costs and expenses not to exceed $45,000 to be paid from the Gross Settlement Amount. *Id.* at 18(b). The amount not to exceed $45,000 will cover all expenses incurred to date, or to be incurred. *Id.* Wells Fargo agrees not to contest any fee, cost or expense application that is not in excess of the amounts in this paragraph. *Id.* at 17 (a), (b).

      3.      <u>Calculation of Individual Settlement Payments</u>

The Settlement Agreement defines Participating Class Members as "all Class Members except those who timely submit a valid Request for Exclusion . . . from this Settlement pursuant to the process described herein." *Id.* ¶ 8(i).

The Settlement Agreement provides for the distribution of shares of the Net Settlement Amount (the "Settlement Shares") to Participating Class Members as follows:

      a.  The "**Meal & Rest Period Premium Allocation**." One Million Six Hundred Thousand dollars ($1,600,000) from the Net Settlement Amount shall be allocated to Meal & Rest Period Premium Settlement Class Members. The Meal & Rest Period Premium Allocation shall be divided amongst all Participating Meal & Rest Period Premium Class Members based on their pro-rata share of Covered Pay Periods (as set forth in Paragraph 8.j.ii, above). A Participating Meal & Rest Period Premium Class Member's pro-rata share of the Meal & Rest Period Premium Allocation is determined by dividing his or her number of Covered Pay Periods by the total number of Covered Pay Periods of all Participating Meal & Rest Period Premium Class Members.

---

[4] On May 18, 2021, Simon moved for leave to add Zamora as a new class representative after Defendant provided evidence of an alleged false statement by Simon. Dkts. 34–36. The parties fully briefed the motion for leave but reached this settlement before it was heard. Dkt. 61 at 12; *see* Dkts. 34, 37, 38, 53. Simon argues that a Service Payment Award of $5000 is reasonable due to Ms. Zamora's willingness to be added as a class representative and face similar risks to those taken by Simon, as well as her being deposed by Defendant. Dkt. 61 at 32. As stated above, following the Motion hearing, the parties stipulated to add Zamora as a class representative.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

b. The "**Waiting Time Penalty Allocation**." Five Hundred Thousand dollars ($500,000) of the Net Settlement Amount shall be allocated to the Waiting Time Penalty Settlement Class. The Waiting Time Penalty Allocation shall be divided evenly amongst all Participating Waiting Time Penalty Class Members.

c. The "**Branch Banking Allocation**." The remaining Net Settlement Amount after deducting the Meal & Rest Period Premium Allocation and the Waiting Time Penalty Allocation shall be allocated to the Branch Banking Settlement Class. The Branch Banking Allocation shall be divided amongst all Participating Branch Banking Class Members based on their pro-rata share of Covered Pay Periods (as set forth in Paragraph 8.j.i, above). A Participating Branch Banking Class Member's pro-rata share of the Branch Banking Allocation is determined by dividing his or her number of Covered Pay Periods by the total number of Covered Pay Periods of all Participating Branch Banking Class Members.

d. The "**PAGA Allocation**." PAGA Group Members will receive a pro rata share of the $50,000 portion of the $200,000 PAGA payment. They will receive this payment and be bound by the PAGA release whether or not they request exclusion from the settlement.

*Id.* ¶ 13.

The Settlement Agreement further provides that "[t]he number of Covered Pay Periods worked by Class Members will be determined by reference to Wells Fargo's records" and that "Wells Fargo's records shall be presumptively correct for determining who the Class Members are (including which individuals are excluded), and the number of Covered Pay Periods." *Id.* ¶ 14.

The Settlement Agreement provides for the payment of taxes as follows:

a. One-half (1/2) of all Settlement Share payments to Participating Class Members (excluding the Waiting Time Penalty Allocation and the PAGA Allocation, if applicable) shall be considered wages and shall be subject to the withholding of all applicable local, state and federal taxes. Participating Class Members will receive from the Administrator a W-2 for the payment and taxes that will be withheld at the rate required by law. As to all Settlement Share payments that shall be considered wages, Wells Fargo (via the Administrator) will pay all amounts required by law to be paid by the employer to any federal, state or local tax authority.

b. One-half (1/2) of all Settlement Share payments to Participating Class Members (excluding the Waiting Time Penalty Allocation and the PAGA Allocation, if applicable) and 100% of the Waiting Time Penalty Allocation and the PAGA Allocation, if applicable, shall be considered non-wages for the settlement of interest and statutory and civil penalty claims. Participating Class Members will also receive from the Administrator an IRS Form 1099 for these payments, in accordance with IRS requirements, and will be responsible for correctly characterizing this compensation for tax purposes and to pay any taxes owing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

Dkt. 63-1 ¶ 15.

      D.     Notice and Payment Plan

          1.     <u>In General</u>

The Settlement Agreement provides a process for notifying Class Members of the settlement. *Id.* ¶¶ 25–35. A copy of the Proposed Notice of Settlement is attached to the Settlement Agreement. Dkt. 63-1, Ex. C.

The Proposed Notice of Settlement describes the terms of the Settlement Agreement, including benefits to Settlement Class Members and claims released by the Settlement Class. *Id.* at 93–97. It explains that Settlement Class Members do not have to take any action to get benefits; they will receive them automatically if the Agreement is approved. *Id.* at 90, 92. It further explains basic information about the action, eligibility as a Settlement Class Member, rights to opt-out and object to the settlement and the procedure for the Final Approval hearing. *Id.* at 90–93.

The Notice of Settlement will contain the following sentence: "To the extent any of the claims alleged in the case of *Youakeem v. Wells Fargo Bank, N.A.*, Orange County Superior Court, Case No. 30-2019-01102109-CU-OE-CXC, are Released Claims, as defined in this Section of this Notice, those claims are also being released by this Settlement." *Id.* ¶ 34.

The Settlement Agreement provides that, within 45 days after the date of Preliminary Approval, Defendant will provide to the Administrator the names, addresses, Social Security numbers, and, if applicable, Covered Pay Periods, of the Settlement Class members and state whether each individual is a member of the Branch Banking Settlement Class, the Meal & Rest Period Premium Class, the Waiting Time Penalty Class and/or the PAGA Group. *Id.* ¶ 26. The Administrator will also verify Social Security numbers and run a search in the U.S. Post Office's National Change of Address Database. *Id.* ¶ 27. The Administrator will mail the Notice of Settlement to all Settlement Class Members within 60 days after Preliminary Approval and will re-mail any notices returned with a forwarding address. *Id.*

The Administrator will withhold from individual Settlement Shares all applicable income and employment taxes, prepare and deliver the necessary tax documentation for signature by all necessary parties, "cause the appropriate deposits of withholding taxes and informational and other tax return filing to occur" and pursue tax refunds on any uncashed checks and remit such payments accordingly. *Id.* ¶ 48.

          2.     <u>Opt-Outs and Objections</u>

Class Members will be notified that they may participate, object to or opt out of the Settlement Agreement. *Id.* ¶¶ 33–34.

To opt out, a Class Member must submit a "Request for Exclusion" to the Settlement Administrator within 45 days of the date the Notice of Settlement is mailed. *Id.* ¶ 33. Class Members who submit a Request for Exclusion cannot object to the Settlement, cannot be Participating Class Members and are not eligible for a Settlement Share from the Net Settlement Amount (except a PAGA Allocation, if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

applicable) unless they revoke their Request for Exclusion in writing prior to the Final Fairness Hearing. *Id.*

To object, a Class Member must submit a written objection to the Administrator within 45 days of the date the Notice of Settlement is mailed. *Id.* ¶ 34. A written objection must include the Class Member's full name, address and the dates of his/her employment at Wells Fargo and state each specific objection and any legal and factual support for each objection. *Id.*

 3. <u>LWDA Payment</u>

The Settlement Agreement provides that the Administrator will pay from the Gross Settlement Amount the LWDA Allocation to the State of California for its share of civil penalties pursuant to PAGA, as approved by the Court. *Id.* ¶ 17. The LWDA Allocation is "75% of the PAGA Payment, the amount the Parties have earmarked for the release of Plaintiff's and each Class Member's claims, if any, under the PAGA." *Id.*

 E. Release of Claims

The Settlement Agreement provides for a release of specific claims against Defendant by Participating Class Members upon the Settlement Date. *Id.* ¶ 36. "Released Claims" are defined as:

 . . . any and all claims, debts, liabilities, demands, obligations, guarantees, actions, or causes of action of whatever kind or nature, whether known or unknown, from December 2, 2015, through the Preliminary Approval Date, that were or could have been alleged based on the claims, facts, and/or allegations contained in the Action (hereinafter, the "Released Claims"), including those arising out of or reasonably related to all claims based on failure to provide meal periods, failure to provide rest periods, failure to pay meal period and/or rest period premium compensation, failure to pay meal period and/or rest period premium compensation based on the regular rate of pay, waiting time penalties for failure to pay all wages due upon termination of employment, failure to provide compliant wage statements, failure to reimburse for business expenses, and violation of California Business & Professions Code Section 17200 *et seq.*, including all claims of any kind for premium pay, liquidated damages, statutory penalties, civil penalties, restitution, expense reimbursement, interest, injunctive relief, punitive damages, other damages, costs, expenses, and attorneys' fees arising from the alleged violation of any provision of common law or statutory law which were or could have been raised as part of Plaintiff's claims, including but not limited to claims under California Labor Code Sections 201, 202, 203, 204, 210, 212, 223, 225.5, 226, 226.3, 226.7, 256, 512, 558, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 2698, *et seq.*, and 2802, all provisions of the California Industrial Welfare Commission Wage Orders that provide the same or similar protection(s), and Section 17200 *et seq.* of the California Business and Professions Code. This release includes releases of all PAGA remedies arising from or reasonably related to any of the underlying claims that were or could have been brought in this Action.

 i. Any Participating Class Member who is a member of the Meal & Rest Period Premium Settlement Class and not a member of the Branch Banking Settlement Class releases only his or her claim for unpaid or underpaid meal and rest period

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

premiums due to Wells Fargo's failure to pay meal period and/or rest period premium
compensation based on the regular rate of pay, and any claim for wages, interest,
damages, restitution, statutory and civil penalties, and fees and costs arising
therefrom, including, but not limited to, claims under Labor Code Sections 201, 202,
203, 204, 210, 212, 223, 225.5, 226, 226.3, 226.7, 256, 512, 558, and 2698, *et seq.*,
all provisions of the California Industrial Welfare Commission Wage Orders that
provide the same or similar protection(s), and Section 17200 *et seq.* of the California
Business and Professions Code.

*Id.*

The Settlement Agreement also provides that, although this is not a general release:

Plaintiff and Participating Class Members each waives all rights and benefits afforded by
Section 1542 of the Civil Code of the State of California with respect to the Released Claims
only and does so understanding the significance of that waiver. Section 1542 provides:

**"A general release does not extend to claims that the creditor or releasing party does not
know or suspect to exist in his or her favor at the time of executing the release and that,
if known by him or her, would have materially affected his or her settlement with the
debtor or released party."**

*Id.*

The Settlement Agreement's effect on subsequent actions is as follows:

This Agreement shall be binding on, and have *res judicata* and preclusive effect in, the Action
and any and all other pending and future lawsuits or other proceedings encompassed by the
Release above, maintained by or on behalf of Plaintiff or any Participating Class Member. The
Parties agree that the Release may be raised as a complete defense to and will preclude any
action or proceeding based on any of the Released Claims.

. . .  If any Class Member initiates a new lawsuit against the Released Parties based on any
claim released under this Agreement, and the Court invalidates the release, any recovery by the
Class Member (on behalf of him or herself, the LWDA, and/or other allegedly aggrieved
employees) shall be offset by the amount, if any, paid to the Class Member, the LWDA, and
other allegedly aggrieved employees in connection with this Settlement. The language in this
Paragraph 37 shall be included in the Notice of Settlement to Class Members.

**V.**    **Analysis**

   A.    Class Certification

      1.    Legal Standards

The first step in considering whether preliminary approval of the Settlement Agreement should be
granted is to determine whether a class can be certified. "[T]he Ninth Circuit has taught that a district

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

court should not avoid its responsibility to conduct a rigorous analysis because certification is conditional: Conditional certification is not a means whereby the District Court can avoid deciding whether, at that time, the requirements of the Rule have been substantially met." *Arabian v. Sony Elecs., Inc.*, No. 05-CV-1741-WQH, 2007 WL 627977, at *2 n.3 (S.D. Cal. Feb. 22, 2007) (quoting *In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir. 1974)). "When, as here, the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts 'must pay undiluted, even heightened, attention to class certification requirements.'" *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

That the parties have reached a settlement "is relevant to a class certification." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Consequently, when

> [c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions— demand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold.

*Id.* at 620 (internal citations omitted). "In the context of a request for settlement-only class certification, the protection of absentee class members takes on heightened importance." *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 129 (2d Cir. 2016) (citing *Amchem*, 521 U.S. at 620).

The first step for class certification is to determine whether the proposed class meets each of the requirements of Fed. R. Civ. P. 23(a). *Dukes*, 564 U.S. at 350–51; *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)–(4). Further, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 564 U.S. at 350. If these four prerequisites are met, the proposed class must meet one of the requirements of Fed. R. Civ. P. 23(b). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Plaintiffs rely on Rule 23(b)(3). *See* Dkt. 65-2 at 23– 25. It provides, in relevant part, that a class proceeding "may be maintained" if "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b).

      2.   <u>Application</u>

          a)   Fed. R. Civ. P. 23(a) Requirements

             (1)   <u>Numerosity</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

Rule 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964) (quoting *Advert. Specialty Nat'l Ass'n v. FTC*, 238 F.2d 108, 119 (1st Cir. 1956)). Although there is no specific numeric requirement, courts generally have found that a class of at least 40 members is sufficient. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

Plaintiffs estimate that the Settlement Class has approximately 25,700 members. Dkt. 61 at 22. This is sufficient to satisfy the numerosity requirement.

(2)    Commonality

Rule 23(a)(2) provides that a class may be certified only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires a showing that the "class members have suffered the same injury," *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)), and "does not mean merely that they have all suffered a violation of the same provision of law." *Id.* The class claims must "depend on a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. In assessing commonality, "even a single common question will do." *Dukes*, 564 U.S. at 359 (internal quotation marks omitted). In general, the commonality element is satisfied where the action challenges "a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).

Plaintiffs contend that "class members share common questions of law and fact which include, but are not limited to: (1) Was Defendant's Personal Appearance Policy lawful without provisions for the reimbursement of necessary expenditures? (2) Did Defendant properly calculate Meal and Rest Period Premium Class Members' regular rate of pay? (3) Did Defendant fail to provide the ability for each Branch Banking Class Member to elect to receive a paper paystub?" Dkt. 61 at 23. Plaintiffs then state that "the core questions in this case concern the legality of policies and practices with respect to meal and rest periods, including payment of meal and rest period premium pay, expense reimbursement, wage statements, and final pay." *Id.* at 25.

Commonality does not require "that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact," class treatment of which will "generate common answers apt to drive the resolution of the litigation." *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (internal citations omitted). Plaintiffs have identified at least one significant question of law or fact that is common. For this reason, the commonality requirement is satisfied.

(3)    Typicality

The typicality requirement is met if the "representative claims are 'typical,'" *i.e.*, "if they are reasonably

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Representative claims "need not be substantially identical." *Id.* The test of typicality is whether "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Like commonality, typicality is construed permissibly. *Hanlon*, 150 F. 3d at 1020. The commonality and typicality requirements of Rule 23(a) tend to merge. *Dukes*, 564 U.S. at 349 n.5.

Plaintiffs argue typicality is satisfied because Simon "is a former non-exempt employee who worked for Defendant in California during the class period, and was subject to similar policies and procedures concerning meal and rest periods, reimbursements, the calculation of regular rate, and final pay." Dkt. 61 at 23. The same facts apply to Zamora. *See* FAC ¶ 19. Further, typicality is present even when putative class members suffered different levels of injury. *See Armstrong*, 275 at F.3d at 869.

For these reasons, the typicality requirement is satisfied.

(4)   Adequacy of Lead Plaintiffs and Class Counsel

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011). "Adequacy of representation also depends on the qualifications of counsel." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) (citing *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982), *abrogated on other grounds by Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)). "[T]he named representative's attorney [must] be qualified, experienced, and generally capable to conduct the litigation . . . ." *Id.* (quoting *Jordan v. L.A. Cty.*, 669 F.2d 1311, 1323 (9th Cir.), *vacated on other grounds* 459 U.S. 810 (1982)).

There is no evidence that Plaintiffs or their counsel have any conflicts of interest with other Class Members.

i.   Adequacy of Simon

Simon "has devoted considerable time and effort to advancing the interests of the class." *Id.* Before reaching a settlement, a motion for class certification was filed in which Simon was the class representative, which the parties fully briefed. In its opposition, Defendant raised potential issues regarding Simon's adequacy as a class representative.

*First*, Defendant alleged that, while employed by Defendant, Simon engaged in fraud and identity theft, including issuing a debit card in a customer's name without the customer's consent that was used to steal more than $50,000 from the customer. Dkt. 29 at 8. Defendant further alleged that Simon denied

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

these allegations at his deposition. *Id.* at 8–9.

"The honesty and credibility of a class representative is a relevant consideration when performing the adequacy inquiry because an untrustworthy plaintiff could reduce the likelihood of prevailing on the class claims." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010) (quoting *Searcy v. eFunds Corp.*, No. 08 C 985, 2010 WL 1337684, at *4 (N.D. Ill. Mar. 31, 2010)); *see also CE Design LTD. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("A named plaintiff who has serious credibility problems ... may not be an adequate class representative."). "[A] plaintiff with credibility problems may be considered to have interests antagonistic to the class." *Ross v. RBS Citizens, N.A.*, No. 09 CV 5695, 2010 WL 3980113, at *4 (N.D. Ill. Oct. 8, 2010). However, "[c]redibility problems do not automatically render a proposed class representative inadequate." *Harris*, 753 F. Supp. 2d at 1015 (citation and quotation marks omitted). If the credibility issues are only general in nature and do not relate directly to material issues in the lawsuit, courts will not find a lead plaintiff inadequate. *Jovel v. Boiron, Inc.*, No. 11-CV-10803-SVW-SHX, 2014 WL 1027874, at *3 (C.D. Cal. Feb. 27, 2014). "There is 'inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud.'" *Harris*, 753 F. Supp. 2d at 1015 (quoting *Ross*, No. 09 CV 5695, 2010 WL 3980113, at *4).

There has not been a determination as to the allegation that Simon acted dishonestly. Although the allegations relate to the circumstances of Simon's termination, they do not make his claims regarding Defendant's policies and practices less credible or present a conflict between Simon and the putative class members. Therefore, the allegations of fraud and identity theft do not make Simon an inadequate class representative.

*Second*, Defendant alleged that Simon's meal period premium pay claim was barred by a related class action settlement in *Silvia Hernandez v. Wells Fargo Bank, N.A.*, Santa Clara County Superior Court Case No. 16CV299319. *Id.* at 19, 24. Amanda Myette, a representative of Rust Consulting -- the administrator in *Hernandez* and the proposed Administrator in this action -- declared that Simon did not opt out of the *Hernandez* class and received a settlement check. Myette Decl., Dkt. 29-4 ¶¶ 1–7.[5] In his reply to the opposition, Simon stated that "[t]he *Hernandez* settlement appears to release claims through May 30, 2019 related to Wells Fargo not paying meal period premiums at the regular rate." Dkt. 38 at 5.

At the Preliminary Approval hearing, Plaintiffs' counsel was directed to file supplemental briefing as to issues raised regarding the adequacy of Simon. The supplemental briefing addressed the allegations of fraud and identify theft, but not whether Simon's claims regarding the meal period premiums are barred by the *Hernandez* settlement. In light of the limited briefing on the potential preclusive effect of the *Hernandez* settlement, it cannot presently be determined whether Simon's meal period premium claim is completely barred. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released

---

[5] Myette also declared that Simon was a class member in *Wells Fargo Wage and Hour Cases*, JCCP Case No. 004821, and that Simon received and negotiated settlement checks in that matter. *Id.* ¶¶ 8–12. However, Defendant did not address that case in its opposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|----------|--------------------------|------|-----------------|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

claim is based on the identical factual predicate as that underlying the claims in the settled class action."). However, even if it were determined that Simon is not an adequate representative of the Meal & Rest Period Premium Settlement Class, no issues have been raised as to whether Zamora is an adequate representative of that sub-class.

*Third*, Defendant alleged that Simon did not receive any rest period premium payments during the putative class period, excluding him from membership in a proposed class of employees who were not paid meal and rest period premiums at the "regular rate of pay." Dkt. 29 at 23–24. Plaintiffs' supplemental briefing did not address this issue. However, the issue is moot for the purpose of this Order because no issues have been raised as to Zamora's claims regarding rest period premium payments.

For the foregoing reasons, it is determined that Simon is an adequate class representative; provided, however, this does not constitute a final determination that Simon is a member and representative of every sub-class.

ii.    Adequacy of Ms. Zamora

Zamora has participated in this litigation since 2021, including submitting to a deposition on April 28, 2021. No issues have been raised as to her adequacy as a class representative. Therefore, it is determined that Zamora is an adequate class representative.

iii.    Adequacy of Class Counsel

Plaintiffs state that Counsel "has extensive experience prosecuting class action claims brought under the Labor Code, has committed resources to prosecuting this case as a class action, and negotiated a favorable settlement for class members in the face of a formidable opposition." Dkt. 61 at 24.

Co-Lead Counsel Shaun Setareh and Thomas Segal have collectively been counsel in more than 100 class action cases. Setareh Decl. ¶ 34. The Setareh Law Group and Shaun Setareh have been appointed as class counsel in at least 19 class actions, including more than a dozen wage and hour cases. *Id.* ¶ 30(h)–(z). The Setareh Law Group has been involved in matters that have resulted in 140 citable state and federal court decisions on Westlaw. *Id.* ¶ 31. Shaun Setareh declares that he is "knowledgeable about the applicable law, [has] worked diligently to investigate and identify the potential claims in this action, and will continue to commit [his] firm's resources to further the interests of the members of the settlement classes." *Id.* ¶ 32.

The proposed award of attorney's fees and incentive awards for Plaintiffs are not so disproportionate to the relief provided to the Class to warrant a finding that Plaintiffs and counsel are not adequate representatives. *Cf. Staton*, 327 F.3d at 975–78 (rejecting incentive awards to 29 class representatives of up to $50,000 each). Issues about the attorney's fees and incentive award are more appropriately addressed when considering whether the Proposed Settlement Agreement is reasonable and fair. *See id.* at 958 ("Although we later question whether the settlement agreement . . . was the result of disinterested representation, that question is better dealt with as part of the substantive review of the settlement than under the Rule 23 inquiry. Otherwise, the preliminary class certification issue can subsume the substantive review of the class action settlement."). Further, the Settlement Agreement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

resulted from arms-length negotiations in which an experienced mediator was involved. Setareh Decl. ¶ 11.

For the foregoing reasons, it is determined that Plaintiffs' Counsel are adequate class counsel.

*     *     *

For these reasons, the adequacy requirement is met for the purposes of conditional certification of the Class.

        b)       Requirements of Fed. R. Civ. P. 23(b)(3)

           (1)     <u>Predominance</u>

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. The predominance analysis assumes that the Rule 23(a)(2) commonality requirement has already been established, *Hanlon*, 150 F.3d at 1022, and "focuses on whether the 'common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (quoting *Hanlon*, 150 F.3d at 1022). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 William Rubenstein, *Newberg on Class Actions* § 4:50, at 196–97 (5th ed. 2012)). Where the issues of a case "require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1778 at 535–39 (2d ed. 1986)).

"Predominance is not, however, a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (internal citations omitted). "Therefore, even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *In re Hyundai*, 926 F.3d at 557–58 (quoting *Tyson Foods, Inc.*, 577 U.S. at 453–54).

Further, the requirements of Fed. R. Civ. P. 23(b)(3) "must be considered in light of the reason for which certification is sought—litigation or settlement . . . ." *Id.* at 558. A class may be certifiable for settlement even though it "may not be certifiable for litigation" where "the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *Id.*

As discussed above in regard to the commonality and typicality requirements, Plaintiffs' claims center on common questions regarding Defendant's policies and practices. These questions predominate over any individual issues that have been presented, and do not turn on an assessment of individual facts.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|----------|--------------------------|------|-----------------|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

Although awards to Participating Class Members in the Meal & Rest Period Premium Settlement Class will be calculated based on their pro-rata share of pay periods, "damage calculations alone cannot defeat certification," even if individual issues predominate. *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167–68 (9th Cir. 2014). "[A]s long as an efficient mechanism exists to calculate damages on a classwide basis, the existence of potential individualized damages will not defeat the predominance requirement." *Aichele v. City of Los Angeles*, 314 F.R.D. 478, 496 (C.D. Cal. 2013). Such a mechanism has been proposed here.

For the foregoing reasons, common issues of law and fact predominate for purposes of Fed. R. Civ. P. 23(b)(3).

(2)   Superiority

Rule 23(b)(3) requires a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This issue is evaluated by considering the following factors: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

The benefits of resolving the claims at issue in a class action outweigh the interest of any Class Member who could pursue and control an individual action. Plaintiffs estimate that there are 27,500 Settlement Class Members, that the potential maximum value of the unpaid wage and reimbursement claims is approximately $36,439,621.90, and that the sum of the unpaid wage and reimbursement claims, statutory penalties and civil penalties is $166,419,846.89. Dkt. 61 at 27–29. Individually, Class Members may not have an incentive to bring individual actions due to the relatively small amount of recovery each could obtain. The potential recovery for any individual Class Member is modest in light of the cost of pursuing an individual claim, as well as the risk to the outcome of such litigation. Given the low individual recovery amount, it would be inefficient for each Class Member to pursue an individual claim. *Amchem Prods.*, 521 U.S. at 617 (internal quotation marks and citation omitted) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive to any individual to bring a solo action . . . . A class action solves this problem . . . .").

Nothing suggests that the management of this action has been, or will be, difficult. Moreover, that the parties have reached a settlement would mitigate, if not resolve, any potential management issues. For these reasons, the factors presented by Fed. R. Civ. P. 23(b)(3) support certification of a settlement class as the superior means to resolve this action.

\*     \*     \*

For the foregoing reasons, it has been shown that the Putative Settlement Class should be conditionally certified for the purpose of settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|----------|--------------------------|------|------------------|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

B.    Preliminary Approval of the Settlement Agreement

1.    <u>Legal Standards</u>

Fed. R. Civ. P. 23(e) requires a two-step process in considering whether to approve the settlement of a class action. First, a court must make a preliminary determination whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting *Staton*, 327 F.3d at 952). In the second step, which occurs after preliminary approval, notification to class members and the compilation of information as to any objections by class members, a court determines whether final approval of the settlement should be granted. *See, e.g., id.*

At the preliminary stage, "the settlement need only be *potentially fair.*" *Id.* This is due, in part, to the policy preference for settlement, particularly in the context of complex class action litigation. *See Officers for Justice v. Civil Serv. Comm'n of City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . .").

As the Ninth Circuit has explained:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.*

In evaluating fairness, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818–19 (9th Cir. 2012). A court is to consider and evaluate several factors as part of its assessment of a proposed settlement. The following non-exclusive factors, which originally were described in *Hanlon*, are among those that may be considered during both the preliminary and final approval processes:

> (1) the strength of the plaintiff's case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the amount offered in settlement;
> (4) the extent of discovery completed and the stage of the proceedings;
> (5) the experience and views of counsel;
> (6) any evidence of collusion between the parties; and
> (7) the reaction of the class members to the proposed settlement.

*See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458–60 (9th Cir. 2000).

Each factor does not necessarily apply to every settlement, and other factors may be considered. For example, courts often assess whether the settlement is the product of arms-length negotiations. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

product of an arms-length, non-collusive, negotiated resolution."). As noted, in determining whether preliminary approval is warranted, a court is to decide whether the proposed settlement has the potential to be deemed fair, reasonable and adequate in the final approval process. *Acosta*, 243 F.R.D. at 386.

Amended Fed. R. Civ. P. 23(e) provides further guidance as to the requisite considerations in evaluating whether a proposed settlement is fair, reasonable and adequate. A court must consider whether:

> (A) the class representatives and Plaintiff's counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3);[6] and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The factors set forth in Fed. R. Civ. P. 23(e) distill the considerations historically used by federal courts to evaluate class action settlements. *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. As the comments of the Advisory Committee explain, "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but rather to address inconsistent "vocabulary" that had arisen among the circuits and "to focus the court and the lawyers on the core concerns" of the fairness inquiry. *Id*.

> 2. <u>Application</u>
>
>> a) Whether the Class Representatives and Plaintiffs' Counsel Have Adequately Represented the Putative Class

The prior discussion confirms that Plaintiffs and their counsel have adequately represented the Class and are well-positioned to continue do so after preliminary approval.

The substantial efforts by counsel and the corresponding progress in pursuing the claims in this action since the time it was filed in December 2019 also provide support for a finding as to the adequacy of representation. "The extent of the discovery conducted to date and the stage of the litigation are both indicators of [Class] Counsel's familiarity with the case and of Plaintiffs having enough information to make informed decisions." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008);

---

[6] Fed. R. Civ. P. 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

*see also Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting 5 *Moore's Federal Practice* § 23.85[2][e] (Matthew Bender 3d ed.)) ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.").

Counsel have actively and extensively litigated this matter. Therefore, there is sufficient information for them to have made informed decisions about this action and its settlement.

This factor weighs in favor of preliminary approval of the Settlement Agreement.

> b) Whether the Settlement Was Negotiated at Arm's Length

The Ninth Circuit has explained that courts "ha[ve] long deferred to the private consensual decision of the parties." *Rodriguez*, 563 F.3d at 965. They will evaluate the settlement process as well as the terms and conditions of the agreement to assure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* (quoting *Hanlon*, 150 F.3d at 1027). Three factors may raise concerns of collusion: (1) "when counsel receive[s] a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

There is no evidence of any fraud, overreaching or collusion among the parties. They engaged in settlement negotiations with the assistance of Jeffrey Ross, an experienced, private neutral. Dkt. 61 at 12. The settlement negotiations were extensive. The parties participated in a full day of mediation on July 12, 2021. *Id.* Only after several more months of negotiations did the parties reach a settlement. *Id.* at 13.

Approximately 62.4% of the Gross Cash Settlement Amount is to be allocated to the Settlement Class Members.

The anticipated attorney's fee award of approximately $2.17 million is substantial, but the amount is not so disproportionate to the total recovery to suggest collusion. Further, the Agreement is non-reversionary, and any unapproved attorney's fees will be divided among the Settlement Class. Dkt. 61 at 7; Dkt. 63-1 at 94. However, the Defendant agrees not to contest the fee application up to $2.17 million, which could be considered a clear sailing agreement. In part because at least one of the *Bluetooth* factors is present, and to apply the independent standards that control, the attorney's fees will be carefully scrutinized in this Order and in any final approval order.

The amount of the fee award will be discussed in greater detail below and evaluated again in connection with the anticipated motion for final approval.

For these reasons, this factor supports preliminary approval of the settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

c)      Whether the Relief Provided for the Class Is Adequate

(1)    Strength of Plaintiffs' Claims, and the Costs, Risks and Delays of
Trial and Appeal

It is "well-settled law that a cash settlement amounting to only a fraction of the potential recovery will
not *per se* render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. "The
proposed settlement is not to be judged against a hypothetical or speculative measure of what might
have been achieved by the negotiators." *Id.* at 625. "Estimates of a fair settlement figure are tempered
by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in
recovery (often measured in years)." *In re Toys "R" Us-Delaware, Inc.—Fair & Accurate Credit
Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014); *see also Rodriguez*, 563 F.3d
at 965 ("In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range
for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery,
and the chances of obtaining it, discounted to the present value.").

Plaintiffs estimate that the total potential recovery for Class Members' claims at trial would be
$36,439,621.90 in compensatory damages. The Gross Settlement Fund of $6,500,000 is 17.3% of the
$36,439,621.90 maximum potential recovery calculated by Plaintiffs' expert for Class Members' claims,
excluding statutory and civil penalties. Factoring in penalties, Plaintiffs estimate that the total potential
recovery is $166,419,846.89. The Gross Settlement Fund is 3.9% of this estimate.

Plaintiffs have provided a sufficient basis to find that the Gross Settlement Amount represents adequate
consideration when viewed in light of the costs, risks and delays associated with further litigation in this
long-pending matter. Those risks include a split in authority over whether statutory penalties under
Labor Code sections 203 and 226 can be obtained, whether Plaintiffs can prove Defendant had the
requisite intent required for certain penalties, the discretion of trial courts to reduce the amount of
PAGA penalties, Defendant's substantial defenses against the reimbursement claim regarding the
professional attire requirement and Defendant's continued denial of the propriety of class certification
for any reason other than settlement. Dkt. 61 at 26–29.

These considerations support the conclusion that the amount offered for the Gross Settlement Amount
is reasonable. Therefore, this factor weighs in favor of preliminary approval.

(2)    Effectiveness of Any Proposed Method of Distributing Relief to the
Class

The proposed method of distributing relief to the Class is fair. The notification process, including
sending notice by first-class mail, sending returned mail to any forwarding address and providing the
telephone number of the Administrator should be effective. Dkt. 63-1 ¶ 31. Further, the expected
timeline for payment under the Settlement Agreement is reasonable. Therefore, this factor weighs in
favor of preliminary approval.

(3)    Terms of Any Proposed Award of Attorney's Fees

The Settlement Agreement provides that attorney's fees and expenses ordered by the Court will be the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

only compensation for Class Counsel that will be paid from the Gross Settlement Fund. The reasonableness of attorney's fees and litigation costs submitted in connection with the Motion are addressed below. Under the Settlement Agreement, any fees and costs not awarded will be included in the Net Settlement Amount and will not revert to the Defendant. *Id*. This also supports approval of the Settlement Agreement.

    d)  Whether the Proposal Treats Putative Class Members Equitably Relative
       to Each Other

The Settlement Agreement provides that the Net Settlement Amount will be allocated among all Settlement Class Members within each class on a pro rata basis. The method of calculating the award to each Class Member is fair and reasonable. Accordingly, this factor weighs in favor of preliminary approval.

          *   *   *

A consideration of the applicable factors demonstrates that the Settlement Agreement is sufficiently fair, reasonable and adequate to warrant preliminary approval. Accordingly, the Motion is **GRANTED** as to the request that the Settlement Agreement be preliminarily approved.

  C.  Incentive Awards

    1.  Legal Standards

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. To determine the reasonableness of incentive awards, the following factors may be considered:

    1) The risk to the class representative in commencing suit, both financial and otherwise;
    2) the notoriety and personal difficulties encountered by the class representative; 3) the
    amount of time and effort spent by the class representative; 4) the duration of the
    litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class
    representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

    2.  Application

As noted, the Settlement Agreement provides for an incentive award of up to $7500 for Simon. Plaintiffs' counsel declares that Simon spent approximately 25 hours in that role. If the proposed amount were approved, it would result in an hourly rate of approximately $300. Dkt. 61 at 32. Such enhancements "are particularly appropriate where the 'class representative[] remain[s] fully involved and expended considerable time and energy during the course of the litigation." *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *4 (D. Or. Nov. 13, 2006)). Plaintiffs' counsel asserts that "the requested service enhancement is justified in light of the reputational risk Simon assumed in bringing a wage and hour class action against his employer." Dkt. 61 at 32.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

The estimated gross recovery for each class member is projected to be $252.92 per employee. *Id.* at 17. Therefore, the ratio of Simon's proposed service award to the average class member payment is approximately 30:1. The service award is approximately 0.1% of the Gross Settlement Amount of $6,500,000.

In light of the work performed, hours worked, professional risk and general release of claims, an incentive award in the range of $2500 to $5000 to Simon is approved for the purposes of this Motion, with the final determination of the amount to made in connection with the anticipated motion for final approval based on a review of any new evidence that is proffered as well as any responses by Class Members.

The Settlement Agreement also provides for an incentive award of up to $5000 for Zamora because, like Simon, she was deposed by Defendant, willing to advocate for the rights of the Class at her own personal risk and will provide a general release as a condition of the Service Payment Awards. *Id.* The ratio of Zamora's proposed award to the average class member payment is approximately 20:1. The service award is less than 0.1% of the Gross Settlement Amount of $6,500,000. At the hearing, Plaintiffs' counsel estimates that Zamora has spent approximately 10 hours on this case. In light of Zamora's willingness to act as a class representative when Simon's adequacy was called into question and the risk she took to her professional reputation, this award is reasonable. An incentive award in the range of $1000 to $2000 for Zamora is approved for the purposes of this Motion, with the final determination of the amount to made in connection with the anticipated motion for final approval based on a review of any new evidence that is proffered as well as any responses by Class Members.

    D.    Attorney's Fees

        1.    <u>Legal Standards</u>

Attorney's fees and costs "may be awarded . . . where so authorized by law or the parties' agreement." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Id.* "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Staton*, 327 F.3d at 964. Thus, a district court must "assure itself that the fees awarded in the agreement were not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel." *Id.* at 965.

District courts have discretion to choose between a lodestar method and the percentage method to evaluate the reasonableness of a request for an award of attorney's fees in a class action. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). A court may also choose one method and then perform a cross-check with the other. *See, e.g.*, *Staton*, 327 F.3d at 973.

When using the percentage method, a court examines what percentage of the total recovery is allocated to attorney's fees. Usually, the Ninth Circuit applies a "benchmark award" of 25%. *Id.* at 968. However, awards that deviate from the benchmark have been approved. *See Paul, Johnson, Alston &*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

*Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("Ordinarily, . . . fee awards [in common fund cases] range from 20 percent to 30 percent of the fund created."); *Schroeder v. Envoy Air, Inc.*, No. CV-16-4911-MWF-KSx, 2019 WL 2000578, at *7 (C.D. Cal. May 6, 2019) (internal citations omitted) ("[T]he 'benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors,'" including "'(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.'")

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. After the lodestar amount is determined, a trial court "may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Such factors "'includ[e] the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016) (quoting *In re Bluetooth Headset Prods.*, 654 F.3d at 941–42).

The attorney's fees requested in this action are assessed by applying both the lodestar and the percentage methods.

       2.   <u>Application</u>

When the Motion was filed, Plaintiffs' Lead Counsel declared that Plaintiffs had incurred approximately $589,062.50 in attorney's fees (approximately 9% of the $6,500,000 million Gross Settlement Fund). Dkt. 62 at 19; Dkt. 61 at 33. Plaintiffs' Counsel anticipated spending approximately 60 more hours on the matter between then and a final approval hearing. Dkt. 62 at 26; Dkt. 61 at 33.

Plaintiffs' Counsel plan to file a motion for attorney's fees not to exceed one third of the Gross Settlement Amount ($2,166,666.66) and an application for reimbursement of costs and expenses not to exceed $45,000 to be heard at the final approval hearing. Dkt. 63 ¶ 18. Defendant agrees not to oppose any fee or costs and expense application not in excess of these amounts. *Id.* Accordingly, the issue whether the proposed attorney's fees are acceptable is not appropriate for final adjudication at this time. However, to provide information that is useful to Class Members in considering whether to object to the Settlement Agreement, it is useful to address them. That analysis shows that the amount of fees requested at this time are within a reasonable range.

       a)   Percentage Approach

As noted, the attorney's fees incurred by Plaintiffs to date represent approximately 9% of the $6.5 million Gross Settlement Amount and account for 728.70 hours.[7] Dkt. 62 at 19. Thus, the average hourly rate is approximately $804.26. Plaintiffs' Counsel previously declared that they anticipate

---

[7] The Motion for Class Certification states 723.56 hours were billed. Dkt. 61 at 33. Because both the Setareh Declaration and the final Lodestar Chart that has been submitted state 728.7 hours were billed, that amount is used for the purpose of this Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

spending an additional 60 hours for a total of 788.70 hours. Assuming, for the purpose of this Order only, that the same distribution of work will apply to future work by the three firms, the final total for actual attorney's fees would be approximately $634,317.96, or 9.76% of the Gross Settlement Amount.

The requested attorney's fees of up to $2,166,666.66 represents 33.33% of the Gross Settlement Amount. This allocation would exceed the 25% "benchmark award" in the Ninth Circuit; nonetheless, an attorney's fees award exceeding the benchmark is not *per se* unreasonable. An upward adjustment from the benchmark may be warranted in light of the results achieved, the risks of litigation, non-monetary benefits conferred by the litigation, customary fees in similar cases, the contingent nature of the fee, the burden carried by counsel or the reasonable expectations of counsel. *Vizcaino*, 290 F.3d at 1048–50.

Favorable results were obtained for the Class. This is significant in light of the risk to Plaintiffs' counsel that there may not have been any recovery in the event that Defendant prevailed at trial. *See* Dkt. 61 at 7 ("…the case was vigorously defended by experienced and skilled defense counsel…"). Plaintiffs' counsel devoted significant time to this matter. This action has been pending since December 2019. Plaintiffs' counsel has presented evidence that the litigation involved substantial investigation, discovery, motion work and protracted settlement negotiations. *See* Dkt. 61 at 8.

For the reasons stated, the information as to attorney's fees submitted by Plaintiffs' counsel to date, representing less than 10% of the Gross Settlement Fund, appear reasonable. However, the anticipated request of up to $2,166,666.66 is potentially excessive when compared to the actual time spent and hourly rates.

        b)        Lodestar Cross-Check

The following table summarizes the rates and hours submitted by Plaintiffs' counsel to date for each attorney:

| Attorney | Bar Year | Hourly Rate | Hours Billed | Total Billed |
|---|---|---|---|---|
| Shaun Setareh | 1999 | $925.00 | 144 | $133,200.00 |
| Thomas Segal | 2002 | $900.00 | 378.3 | $340,470.00 |
| Jose Patino | 2010 | $725.00 | 42.5 | $30,812.50 |
| Farrah Grant | 2013 | $650.00 | 86 | $55,900.00 |
| Alex McIntosh | 2018 | $425.00 | 4.2 | $1,785.00 |
| Nolan Dilts | 2019 | $400.00 | 23.2 | $9,280.00 |
| Rotem Tamir | 2019 | $400.00 | 15.5 | $6,200.00 |
| Shane Farley | 2021 | $350.00 | 1.6 | $560.00 |
| Tyson Gibb | 2021 | $325.00 | 9.1 | $2,957.50 |
| Maxim Gorbunov | 2021 | $325.00 | 24.3 | $7,897.50 |
| **Total** | | | **728.7** | **$589,062.50** |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

| | | | | |
|---|---|---|---|---|
| Fees Sought | | | | $2,166,666.66 |
| **Multiplier** | | | | **3.68** |

The data submitted reflects that Plaintiffs' Counsel have worked a total of 728.7 hours on this matter with a corresponding fee amount of $589,062.50.

(1)    <u>Whether the Rates Claimed Are Reasonable</u>

A review has been conducted of the fee requests as well as the detailed descriptions of the work performed by each attorney. Part of that review has been an assessment of the quality and nature of the work performed by the attorneys during the course of the litigation as well as the rates charged by counsel in this District, and the corresponding skills and experience of such counsel. In light of the foregoing factors, the proposed hourly rates are deemed reasonable at this stage for purposes of the lodestar analysis.

(2)    <u>Whether the Hours Charged Are Reasonable</u>

As required by the Standing Order, Plaintiffs' Counsel have provided the following tables summarizing the hours worked on this matter:

| Table 1 | | | | |
|---|---|---|---|---|
| **Task 1: Complaint** | | | | **Explanation of Task 1** |
| Attorney | Rate | Hours | Fee | This category includes hours spent drafting and reviewing the complaint and PAGA letter, as well as time spent evaluating the case in the pre-litigation stage. |
| Shaun Setareh (Principal) | $925.00 | 2.9 | $2,682.50 | |
| Alex McIntosh (Associate) | $425.00 | 4.0 | $1,700.00 | |
| **Fee Request for Task 1** | | 6.9 | $4,382.50 | |

| **Task 2: Discovery** | | | | **Explanation of Task 2** |
|---|---|---|---|---|
| Attorney | Rate | Hours | Fee | This category includes work and communications regarding: discovery disputes, propounding discovery, responding to discovery requests, meet and confer regarding discovery, Motion to Compel, Informal Discovery Conference, reviewing Production of Documents and responses, communication with client regarding discovery requests, *BelAire-West* notices. |
| Thomas Segal (Senior Associate) | $900.00 | 38.5 | $34,650.00 | |
| Farrah Grant (Associate) | $650.00 | 20.6 | $13,390.00 | |
| Nolan Dilts (Associate) | $400.00 | 22.7 | $9,080.00 | |
| Rotem Tamir (Associate) | $400.00 | 14.8 | $5,920.00 | |
| **Fee Request for Task 2** | | 96.6 | $63,040.00 | |

| **Task 3: Case Management** | | | | **Explanation of Task 3** |
|---|---|---|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

| Attorney | Rate | Hours | Fee | This category includes work and communications regarding: calendaring, status reports, obtaining and retaining a Class Representative, notice of lodging, ADR, upcoming hearings, other potentially related cases, deadlines, Rule 26(f) Conference, tracking case tasks and other case management software duties, review of case files and correspondences which do not fall into other categories, discussing the future of the case, Case Management Conferences. |
|---|---|---|---|---|
| Thomas Segal (Senior Associate) | $900.00 | 2.1 | $1,890.00 | |
| Farrah Grant (Associate) | $650.00 | 9.7 | $6,305.00 | |
| Alex McIntosh (Associate) | $425.00 | 0.2 | $85.00 | |
| Rotem Tamir (Associate) | $400.00 | 0.7 | $280.00 | |
| Nolan Dilts (Associate) | $400.00 | 0.5 | $200.00 | |
| Shane R Farley (Associate) | $350.00 | 0.1 | $35.00 | |
| Tyson Gibb (Associate) | $325.00 | 5.0 | $1,625.00 | |
| **Fee Request for Task 3** | | 18.3 | $10,420.00 | |

| Task 4: Mediation | | | | Explanation of Task 4 |
|---|---|---|---|---|
| Attorney | Rate | Hours | Fee | This category includes work and communications relating to mediation. This includes: communications with Opposing Counsel, mediator, experts, client, and in-firm personnel; preparing for mediation; review of expert data; drafting and reviewing of the mediation brief; setting up and coordinating mediation; attending mediation; signing of relevant documents and contracts. |
| Shaun Setareh (Principal) | $925.00 | 57.9 | $53,557.50 | |
| Thomas Segal (Senior Associate) | $900.00 | 18.0 | $16,200.00 | |
| Farrah Grant (Associate) | $650.00 | 10.3 | $6,695.00 | |
| **Fee Request for Task 4** | | 86.2 | $76,452.50 | |

| Task 5: Motion for Leave to Amend | | | | Explanation of Task 5 |
|---|---|---|---|---|
| Attorney | Rate | Hours | Fee | This category includes work and communications relating to Motion for Leave to Amend including: drafting and reviewing of the Motion, Drafting and reviewing the Reply, and drafting and reviewing of the accompanying documents. |
| Thomas Segal (Senior Associate) | $900.00 | 19.3 | $17,370.00 | |
| Farrah Grant (Associate) | $650.00 | 2.9 | $1,885.00 | |
| **Fee Request for Task 5** | | 22.2 | $19,255.00 | |

| Task 6: Motion for Class Certification | | | | Explanation of Task 6 |
|---|---|---|---|---|
| Attorney | Rate | Hours | Fee | This category includes work and communications relating to Motion for Class Certification including: drafting and reviewing potential class member |
| Shaun Setareh (Principal) | $925.00 | 63.0 | $58,275.00 | |
| Thomas Segal (Senior Associate) | $900.00 | 186.8 | $168,120.00 | |
| Farrah Grant (Associate) | $650.00 | 20.2 | $13,130.00 | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

| | | | | questionnaire, coordinating with the questionnaire call service, drafting and signing of potential class member declarations, reviewing signed declarations, communications with experts, review of expert data, drafting and reviewing of the Motion, drafting and reviewing of the Reply, review of the Opposition. |
|---|---|---|---|---|
| **Fee Request for Task 6** | | 270.0 | $239,525.00 | |

| Task 7: Depositions | | | | Explanation of Task 7 |
|---|---|---|---|---|
| Attorney | Rate | Hours | Fee | This category includes work and communications regarding depositions. In this case, there were depositions of Plaintiff, declarants for Motion for Class Certification, and Rule 30(b)(6) designee. This category includes work and communications regarding the following: preparing for depositions, drafting and amending of deposition notices, taking depositions, defending depositions, reviewing of the deposition transcripts. |
| Shaun Setareh (Principal) | $925.00 | 17.0 | $15,725.00 | |
| Thomas Segal (Senior Associate) | $900.00 | 64.4 | $57,960.00 | |
| Farrah Grant (Associate) | $650.00 | 19.0 | $12,350.00 | |
| Shane R Farley (Associate) | $350.00 | 1.5 | $525.00 | |
| **Fee Request for Task 7** | | 101.9 | $86,560.00 | |

| Task 8: Research | | | | Explanation of Task 8 |
|---|---|---|---|---|
| Attorney | Rate | Hours | Fee | This category includes general research such as researching other cases filed against the Defendant and research regarding whether to file a Motion for Remand. |
| Thomas Segal (Senior Associate) | $900.00 | 16.9 | $15,210.00 | |
| Farrah Grant (Associate) | $650.00 | 0.8 | $520.00 | |
| Tyson Gibb (Associate) | $325.00 | 0.3 | $97.50 | |
| **Fee Request for Task 8** | | 18.0 | $15,827.50 | |

| Task 9: Settlement and Settlement Approval | | | | Explanation of Task 9 |
|---|---|---|---|---|
| Attorney | Rate | Hours | Fee | This category includes work and communications relating to Settlement and Approval of Settlement including: drafting and review of the Settlement Agreement, analyzing of the settlement allocation, requesting bids for settlement administration, providing notice of settlement, reviewing order regarding preliminary |
| Shaun Setareh (Principal) | $925.00 | 1.0 | $925.00 | |
| Thomas Segal (Senior Associate) | $900.00 | 22.4 | $20,160.00 | |
| Jose Patino (Senior Associate) | $725.00 | 42.5 | $30,812.50 | |
| Farrah Grant (Associate) | $650.00 | 1.6 | $1,040.00 | |
| Tyson Gibb (Associate) | $325.00 | 3.8 | $1,235.00 | |
| Maxim Gorbunov (Associate) | $325.00 | 24.3 | $7,897.50 | |
| **Fee Request for Task 9** | | 95.6 | $62,070.00 | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | | Date | August 11, 2023 |
|---|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | | |

| | | | | approval requirements, drafting and reviewing the Motion for Preliminary Approval and accompanying charts and documents. |
|---|---|---|---|---|

| Task 10: Motion to Stay | | | | Explanation of Task 10 |
|---|---|---|---|---|
| Attorney | Rate | Hours | Fee | This category includes work and communications relating to the Motion to Stay PAGA action filed in state court by Defendant, including drafting and reviewing of the opposition to the Motion and review of relevant documents. |
| Shaun Setareh (Principal) | $925.00 | 2.2 | $2,035.00 | |
| Thomas Segal (Senior Associate) | $900.00 | 9.9 | $8,910.00 | |
| Farrah Grant (Associate) | $650.00 | 0.9 | $585.00 | |
| **Fee Request for Task 10** | | 13.0 | $11,530.00 | |

Based on a review of the evidence submitted with respect to the work performed in this matter, issues are raised about the number of hours spent on certain tasks. Based on a review the present evidence, certain exclusions and downward adjustments to the time charges, are warranted. These adjustments result in a reduction to the lodestar in the amount of $207,162.5, *i.e.*, from $589,062.50 to $381,900.00. These adjustments are reflected in the following table.

| Task | Claimed Amounts | Reduced Amounts |
|---|---|---|
| Task 1: Complaint | $4,382.50 | $4,000.00 |
| Task 2: Discovery | $63,040.00 | $40,000.00 |
| Task 3: Case Management | $10,420.00 | $5,500.00 |
| Task 4: Mediation | $76,452.50 | $53,000.00 |
| Task 5: Motion for Leave to Amend | $19,255.00 | $14,000.00 |
| Task 6: Motion for Class Certification | $239,525.00 | $160,000.00 |
| Task 7: Depositions | $86,500.00 | $52,000.00 |
| Task 8: Research | $15,827.50 | $4,400.00 |
| Task 9: Settlement and Settlement Approval | $62,070.00 | $39,000.00 |
| Task 10: Motion to Stay | 11,530.00 | 10,000.00 |
| **TOTAL:** | **$589,062.50** | **$381,900.00** |

      c)     Conclusion on Attorney's Fees

Based on the adjusted lodestar of $381,900 and the requested award of $2,166,666.66, the multiplier would be 5.67. If the award were reduced to $1,625,000 (representing 25% of the Gross Settlement Amount), the multiplier would be 4.26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

Based on the present evidence, a fee award in the range of $1.6 million to $2.1 million is preliminarily approved. This determination is based on the information presented, without prejudice to a *de novo* review in connection with the anticipated motions for attorney's fees and final approval in which additional evidence is presented as to the work performed, including a detailed description of the tasks performed in connection with this action that is in conformance with the Standing Order.

  E.  Litigation Costs

Plaintiffs' Counsel seek reimbursement for up to $45,000 in litigation costs. This request is not supported by any evidence. Therefore, it cannot be determined whether these costs are appropriate and reasonable for purposes of preliminary approval. The final award of costs will be determined in connection with the anticipated motion for final approval and based on the supplemental evidence proffered in support of that motion. The amount of the award will not exceed $45,000.

  F.  Appointment of Settlement Administrator

The Settlement Agreement provides that Rust Consulting, Inc. ("Rust") will act as the settlement administrator (the "Third Party Administrator"). Dkt. 63 ¶ 25. The Settlement Agreement also provides for an estimated payment of approximately $69,677 to the Third Party Administrator, to be paid from the Gross Settlement Fund. *Id.* ¶ 19. Rust was selected as the most cost-effective administrator after the parties requested price quotes from Rust and two similar administrators. Dkt. 62 at 27. Based on the evidence presented, Rust is determined to be an adequate administrator.

Plaintiffs have not submitted evidence describing the basis for administrative costs of $69,677. Therefore, the matter will be reviewed *de novo* in connection with the anticipated motion for final approval. In support of that motion the parties shall provide evidence as to the basis for administrative costs of up to $69,677. The amount approved in connection with the anticipated motion for final approval will not exceed $69,677.

  G.  Class Notice

    1.  <u>Legal Standards</u>

Rule 23(e)(1)(B) requires that a court "direct notice in a reasonable manner to all class members who would be bound by" a proposed class settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

    2.  <u>Application</u>

As stated, the Proposed Notice summarizes the terms of the Settlement Agreement, advises putative class members of their right to opt out of the Settlement Agreement and provides a process for disputing the calculation of their settlement portion. The Proposed Notice satisfies the requirements of Rule 23(e)(1)(B).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | August 11, 2023 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

**VI.    Conclusion**

For the reasons stated in this Memorandum, the Motion is **GRANTED.** The Final Approval hearing is set for December 11, 2023. The anticipated motion for final approval as well as any separate motion for an award of attorney's fees shall be filed on or before November 13, 2023. Any objections or oppositions shall be filed on or before November 23, 2023. This information shall be included in the notice to Class Members.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer        tj