UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| T. Jackson | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) ORDER RE MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEY'S FEES, REIMBURSEMENT OF LITIGATION COSTS AND ENHANCEMENT AWARDS (DKT. 97)

## I. Introduction

On December 2, 2019, Caudley Simon ("Simon") brought this putative class action in the Los Angeles Superior Court against Wells Fargo Bank, N.A. ("Defendant") and several unnamed Defendants. Dkt. 1, Ex. A ("Complaint"). On January 8, 2020, the action was removed pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). Dkt. 1.

The Complaint advances seven causes of action on behalf of all current and former non-exempt employees of Wells Fargo in the State of California for the period from December 2, 2015, to the date of final judgment:

> (i) failure to provide meal periods, in violation of Cal. Lab. Code §§ 204, 223, 226.7, 512 and 1198;
> (ii) failure to provide rest periods, in violation of Cal. Lab. Code §§ 204, 223, 226.7 and 1198;
> (iii) failure to pay hourly and overtime wages, in violation of Cal. Lab. Code §§ 223, 510, 1194, 1197 and 1198;
> (iv) failure to indemnify, in violation of Cal. Lab. Code §§ 223 and 2802;
> (v) failure to provide accurate written wage statements, in violation of Cal. Lab. Code § 226;
> (vi) failure to timely pay all final wages, in violation of Cal. Lab. Code §§ 201–203; and
> (vii) unfair competition, in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.*

Dkt. 1-1 ¶¶ 45–147.

After engaging in mediation, the parties filed a Joint Notice of Settlement on October 20, 2021. Dkt. 49. On April 16, 2022, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement. Dkt. 61 (the "Preliminary Approval Motion"). The Preliminary Approval Motion was supported by the following: a memorandum (Dkt. 61 at 7–34); a declaration by Plaintiffs' counsel (the "Setareh Declaration" (Dkt. 62

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

at 1–27)); a copy of the settlement agreement (the "Settlement Agreement" (Dkt. 63-1))[1]; a stipulation to file a first amended complaint (the "Stipulation" (Dkt. 63-1 at 40–43)); the proposed First Amended Complaint (Dkt. 63-1 at 45–75); a proposed notice to class members (the "Proposed Notice" (Dkt. 63-1 at 90–98)); and submissions in support of a request for the award of attorney's fees to Plaintiffs' counsel. Dkt. 62-3.

Through the Preliminary Approval Motion, Plaintiffs sought the following:

1. conditional certification of the Settlement Class;
2. preliminary approval of the Settlement Agreement;
3. appointment of Plaintiffs as class representatives;
4. appointment of Setareh Law Group as class counsel;
5. approval of the Proposed Notice;
6. approval of the notice procedures set forth in the Settlement Agreement;
7. appointment of Rust Consulting, Inc. as the settlement administrator;
8. directing that notice be given to Settlement Class Members; and
9. scheduling a final fairness hearing.

Dkt. 61 at 2.

A hearing on the Preliminary Approval Motion was held on October 17, 2022. Dkt. 70.[2] On October 26, 2022, Plaintiffs' counsel filed supplemental briefing regarding the adequacy of Simon as the class representative. Dkt. 75. The matter was then deemed submitted.

The Preliminary Approval Motion was granted on August 11, 2023 (the "Preliminary Approval Order"). Dkt. 94. The Preliminary Approval Order is incorporated here by this reference. The Preliminary Approval Order also approved the Stipulation to file a First Amended Complaint ("FAC"), adding Natalia Zamora ("Zamora") as a class representative, and directed that if the settlement were to not become final, the FAC would become null and void and the prior operative Complaint would be reinstated. *Id.* at 2. On August 14, 2023, Plaintiffs filed the FAC pursuant to that order. Dkt. 95.

On November 13, 2023, Plaintiffs filed a Motion for Final Approval of Class Action Settlement, Attorney's Fees, Reimbursement of Litigation Costs, and Enhancement Awards ("the Motion" (Dkt. 97)).[3] A hearing on the Motion was conducted on December 11, 2023, and the matter was taken under submission. Dkt. 100. For the reasons stated in this Order, the Motion is **GRANTED**, subject to certain modifications to the amounts requested for attorney's fees and incentive awards.

---

[1] Plaintiffs initially filed the settlement agreement as Exhibit 1 to the Setareh Declaration. *See* Dkt. 62-1. On April 21, 2022, Plaintiffs filed a Notice of Errata (Dkt. 63) identifying errors in that exhibit and attaching a corrected copy of the settlement agreement. Dkt. 63-1. The corrected copy is the operative settlement agreement.

[2] On October 14, 2022, Proposed Intervenor Josephine Easton filed a Motion to Intervene. Dkt. 68. After the Motion to Intervene was briefed, it was taken under submission on December 8, 2022. Dkt. 87. On January 23, 2023, the parties filed a Stipulation to Withdraw Motion to Intervene. Dkt. 88. The Stipulation was approved on February 2, 2023. Dkt. 90.

[3] The deadline to object, November 24, 2023, had not yet passed when the Motion was filed. On December 7, 2023, Plaintiffs filed another Declaration of Chris Pikus ("Pikus Decl." (Dkt. 98)) with updated information as to the number of objections and opt-outs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

## II. Factual Background

### A. The Parties

The FAC alleges that Simon is a resident of California. FAC ¶ 4. It is alleged that Simon worked as a non-exempt, hourly employee for Defendant from approximately November 20, 2014, to November 24, 2018. FAC ¶ 18. The FAC alleges that Zamora is a resident of California. FAC ¶ 5. It is alleged that Zamora has worked as a non-exempt, hourly employee for Defendant from November 2011 to the present. FAC ¶ 19.

It is alleged that Defendant is a national banking organization doing business in California. FAC ¶ 6. It is a citizen of South Dakota. Dkt. 1 at 4.

### B. Allegations in the FAC

It is alleged that Defendant failed to provide Simon, Zamora and other non-exempt or hourly employees in California with meal periods of at least thirty minutes for each five-hour work period, as required by California law. FAC ¶ 30. It is further alleged that Defendant required Plaintiffs to end a meal period early whenever a customer entered a facility and there were not enough other employees available to assist the customer. FAC ¶ 31.

It is further alleged that Plaintiffs and members of the putative class were not provided with rest periods of at least ten minutes for each four-hour work period. FAC ¶ 32. It is further alleged that Defendant imposed productivity requirements that required employees to work through rest periods in order to complete assignments on time. FAC ¶ 33.

As to both the meal period and rest break claims, the FAC alleges that Defendant had a policy of not scheduling breaks as part of each shift. FAC ¶¶ 30, 32. It is further alleged that Defendant "chronically understaff[ed]" each work shift so that employees could not take a break; imposed work demands on employees that prevented them from taking breaks and finishing their work on time; and lacked a formal meal and rest period policy. FAC ¶¶ 30, 32. It is further alleged that Defendant failed to pay premium wages for noncompliant meal and rest periods. FAC ¶¶ 41, 42.

It is also alleged that Defendant unilaterally altered, or directed employees to alter, their timesheets to reflect meal periods that they did not actually receive and/or to reduce time to limit overtime wages that were owed. FAC ¶ 24. It is further alleged that putative class members were not paid for time spent waiting to clock-in during the frequent crashes of the associated computer system. FAC ¶¶ 20–22, 25. It is alleged that as a result of these practices, Plaintiffs and the putative class performed off-the-clock work (FAC ¶¶ 26–29) and were not provided with accurate wage statements. FAC ¶¶ 39–43.

It is further alleged that Plaintiffs and the putative class were required to utilize their own cell phones and vehicles to perform job duties and to purchase and maintain their uniforms and were not reimbursed for these expenses. FAC ¶¶ 34–38.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

Finally, it is alleged that Defendant failed to pay employees their final paychecks at the time of termination and/or within 72 hours after resignation. FAC ¶¶ 45, 46.

### III.    Summary of the Terms of the Settlement

####       A.    Class Definition

The Settlement Agreement defines the Settlement Class as "the Branch Banking Settlement Class, the Meal & Rest Period Premium Settlement Class, and the Waiting Time Penalty Settlement Class." Dkt. 63-1 ¶ 8(k).

The Branch Banking Settlement Class is defined as "all employees of Wells Fargo who worked in a non-exempt position at a Wells Fargo bank branch in California from December 2, 2015, through the date Plaintiff files his motion for preliminary approval of the settlement (the '**Preliminary Approval Filing Date**')[4] who were hired prior to December 11, 2015 and (2) all employees of Wells Fargo who worked in a non-exempt position at a Wells Fargo bank branch in California from November 20, 2018, through the Preliminary Approval Filing Date who were hired or re-hired on or after December 11, 2015." Dkt 63-1 ¶ 8(c)(i). This class excludes "any person whose claim is entirely barred by the settlement in *Wells Fargo Bank Wage and Hour Cases*, Los Angeles County Superior Court, Case No. JCCP 4702 (the "**JCCP 4702 Settlement**")." *Id.* ¶ 8(c)(ii). The Class Period is from December 2, 2015, though the Preliminary Approval Filing Date. *Id.* ¶ 8(f)(i).

The Meal & Rest Period Premium Settlement Class is defined as "all California non-exempt employees who received a meal or rest period premium payment during a time period covered by applicable nondiscretionary incentive compensation from December 2, 2015, through December 31, 2021. *Id.* ¶ 8(d)(i). This class excludes "any person whose claim is entirely barred by the settlement in *Hernandez v. Wells Fargo Bank, N.A., et al.*, Santa Clara County Superior Court, Case No. 16CV299319 (the "***Hernandez* Settlement**"). *Id.* ¶ 8(d)(ii). The Class Period for this class is defined as December 2, 2015, through December 31, 2021. *Id.* ¶ 8(f)(ii).

The Waiting Time Penalty Settlement Class is defined as "all Meal & Rest Period Premium Class Members whose employment with Wells Fargo terminated on or after December 2, 2016." *Id.* ¶ 8(e). The Class Period for this class is from December 2, 2016, through the Preliminary Approval Filing Date. *Id.* ¶ 8(f)(iii).

The Settlement Agreement also defines "PAGA Group Members" as all Settlement Class members who worked at Wells Fargo between November 20, 2018 and the Preliminary Approval Filing Date. *Id.* ¶ 8(h).

####       B.    Settlement of PAGA Claims

In a separate state court action, Simon sought civil penalties under the California Private Attorneys General Act of 2004 ("PAGA") for the same underlying wage and hour violations alleged in this matter. Dkt. 61 at 7. As a condition of the Settlement Agreement, Simon must successfully dismiss the PAGA

---

[4] The Motion was filed on April 16, 2022.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

action. Dkt. 63-1 ¶ 7(a). The Settlement Agreement also includes a release of the PAGA claims by Plaintiffs and the Settlement Class. *Id.* ¶ 36; Ex. B.

    C.    Payment to Putative Class Members

        1.    <u>Gross Settlement Amount</u>

The Settlement Agreement provides for the payment by Defendant of a "Gross Settlement Amount" of $6,500,000, plus the employer's share of any payroll taxes related to the settlement payments. *Id.* ¶ 12(a).

        2.    <u>Deductions from the Gross Settlement Amount</u>

            a)    Overview

The parties propose to allocate the Gross Settlement Amount as follows:

| Description of Amount | Amount | Percent |
|---|---:|---:|
| **Gross Settlement Amount** | **$6,500,000.00** | **100%** |
| Class Representative Service Payment Award | ($7,500.00) | 0.1% |
| Natalia Zamora Service Award | ($5,000.00) | <0.1% |
| Estimated Attorneys' Fees Award to Class Counsel | ($2,166,666.66) | 33.3% |
| Class Counsel's Litigation Costs | ($45,000.00) | 0.7% |
| Third Party Administrator Costs | ($69,667.00) | 1.1% |
| LWDA Payment | ($150,000.00) | 2.3% |
| **Net Settlement Amount** | **$4,056,166.34** | **62.4%** |

*See* Dkt. 63-1 ¶¶ 12–21.

The parties propose to allocate the Net Settlement Amount as follows:

| Description of Amount | Amount | Percent |
|---|---:|---:|
| **Net Settlement Amount** | **$4,056,166.34** | **100%** |
| PAGA Group Allocation | ($50,000.00) | 1.2% |
| Meal & Rest Period Settlement Class Allocation | ($1,600,000.00) | 39.4% |
| Waiting Time Penalty Settlement Class Allocation | ($500,000.00) | 12.3% |
| Branch Banking Settlement Class Allocation | ($1,906,166.34) | 47.0% |

*Id.* ¶ 13.[5]

---

[5] The PAGA Group Allocation, Meal & Rest Period Settlement Class Allocation and Waiting Time Penalty Settlement Class Allocation are set at exact dollar amounts. The Branch Banking Settlement Class Allocation is defined as the remaining amount of the Net Settlement Amount after the latter two class allocations are deducted, *i.e.*, it is the remaining portion of the Net Settlement Amount. Any reductions made to the proposed deductions of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

        b)       Incentive Awards for Class Representatives

The Settlement Agreement provides for an incentive award for Simon not to exceed $7500 to be paid from the Gross Settlement Fund. Settlement Agreement ¶ 16. The Settlement Agreement also provides for a service payment award for Zamora not to exceed $5000 to be paid from the Gross Settlement Fund. *Id.*[6]

        c)       Settlement Administration Costs

The Settlement Agreement provides that Rust Consulting, Inc. ("Rust") will act as the settlement administrator (the "Third Party Administrator"). Settlement Agreement ¶ 25. The Settlement Agreement also provides for an estimated payment of approximately $69,677 to the Third Party Administrator, to be paid from the Gross Settlement Fund. *Id.* ¶ 19.

        d)       Attorney's Fees

The Settlement Agreement provides that Plaintiffs' Counsel will request an award of attorney's fees and expenses from the Gross Settlement Fund, which shall not exceed $2,166,666.66. Settlement Agreement ¶ 18(a). This amount will cover all worked performed, and to be performed, in connection with this matter. The Settlement Agreement also provides that Plaintiffs' Counsel shall submit an application for reimbursement of costs and expenses not to exceed $45,000 to be paid from the Gross Settlement Amount. *Id.* at 18(b). The amount, not to exceed $45,000, will cover all expenses incurred to date, or to be incurred. *Id.* Wells Fargo agrees not to contest any fee, cost or expense application that is not in excess of the amounts in this paragraph. *Id.* at 17 (a), (b).

        3.       Calculation of Individual Settlement Payments

The Settlement Agreement defines Participating Class Members as "all Class Members except those who timely submit a valid Request for Exclusion . . . from this Settlement pursuant to the process described herein." *Id.* ¶ 8(i).

The Settlement Agreement provides for the distribution of shares of the Net Settlement Amount (the "Settlement Shares") to Participating Class Members as follows:

        a.       The "**Meal & Rest Period Premium Allocation**." One Million Six Hundred Thousand dollars ($1,600,000) from the Net Settlement Amount shall be allocated to Meal & Rest

---

the Gross Settlement Amount, which revert to the Net Settlement Amount, will thereby revert to the Branch Banking Settlement Class Allocation.

[6] On May 18, 2021, Simon moved for leave to add Zamora as a new class representative after Defendant provided evidence of an alleged false statement by Simon. Dkts. 34–36. The parties fully briefed the motion for leave but reached this settlement before it was heard. Dkt. 61 at 12; *see* Dkts. 34, 37, 38, 53. Simon argues that a Service Payment Award of $5000 is reasonable due to Zamora's willingness to be added as a class representative and face similar risks to those taken by Simon, as well as her being deposed by Defendant. Dkt. 61 at 32. As stated above, the parties stipulated to add Zamora as a class representative.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

        Period Premium Settlement Class Members. The Meal & Rest Period Premium Allocation shall be divided amongst all Participating Meal & Rest Period Premium Class Members based on their pro-rata share of Covered Pay Periods (as set forth in Paragraph 8.j.ii, above). A Participating Meal & Rest Period Premium Class Member's pro-rata share of the Meal & Rest Period Premium Allocation is determined by dividing his or her number of Covered Pay Periods by the total number of Covered Pay Periods of all Participating Meal & Rest Period Premium Class Members.

    b. The "**Waiting Time Penalty Allocation**." Five Hundred Thousand dollars ($500,000) of the Net Settlement Amount shall be allocated to the Waiting Time Penalty Settlement Class. The Waiting Time Penalty Allocation shall be divided evenly amongst all Participating Waiting Time Penalty Class Members.

    c. The "**Branch Banking Allocation**." The remaining Net Settlement Amount after deducting the Meal & Rest Period Premium Allocation and the Waiting Time Penalty Allocation shall be allocated to the Branch Banking Settlement Class. The Branch Banking Allocation shall be divided amongst all Participating Branch Banking Class Members based on their pro-rata share of Covered Pay Periods (as set forth in Paragraph 8.j.i, above). A Participating Branch Banking Class Member's pro-rata share of the Branch Banking Allocation is determined by dividing his or her number of Covered Pay Periods by the total number of Covered Pay Periods of all Participating Branch Banking Class Members.

    d. The "**PAGA Allocation**." PAGA Group Members will receive a pro rata share of the $50,000 portion of the $200,000 PAGA payment. They will receive this payment and be bound by the PAGA release whether or not they request exclusion from the settlement.

*Id.* ¶ 13.

The Settlement Agreement further provides that "[t]he number of Covered Pay Periods worked by Class Members will be determined by reference to Wells Fargo's records" and that "Wells Fargo's records shall be presumptively correct for determining who the Class Members are (including which individuals are excluded), and the number of Covered Pay Periods." *Id.* ¶ 14.

The Settlement Agreement provides for the payment of taxes as follows:

    a. One-half (1/2) of all Settlement Share payments to Participating Class Members (excluding the Waiting Time Penalty Allocation and the PAGA Allocation, if applicable) shall be considered wages and shall be subject to the withholding of all applicable local, state and federal taxes. Participating Class Members will receive from the Administrator a W-2 for the payment and taxes that will be withheld at the rate required by law. As to all Settlement Share payments that shall be considered wages, Wells Fargo (via the Administrator) will pay all amounts required by law to be paid by the employer to any federal, state or local tax authority.

    b. One-half (1/2) of all Settlement Share payments to Participating Class Members (excluding the Waiting Time Penalty Allocation and the PAGA Allocation, if applicable)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

> and 100% of the Waiting Time Penalty Allocation and the PAGA Allocation, if applicable, shall be considered non-wages for the settlement of interest and statutory and civil penalty claims. Participating Class Members will also receive from the Administrator an IRS Form 1099 for these payments, in accordance with IRS requirements, and will be responsible for correctly characterizing this compensation for tax purposes and to pay any taxes owing.

Dkt. 63-1 ¶ 15.

        3.      <u>LWDA Payment</u>

The Settlement Agreement provides that the Administrator will pay from the Gross Settlement Amount the LWDA Allocation to the State of California for its share of civil penalties pursuant to PAGA, as approved by the Court. *Id.* ¶ 17. The LWDA Allocation is "75% of the PAGA Payment, the amount the Parties have earmarked for the release of Plaintiff's and each Class Member's claims, if any, under the PAGA." *Id.*

      D.      Release of Claims

The Settlement Agreement provides for a release of specific claims against Defendant by Participating Class Members upon the Settlement Date. *Id.* ¶ 36. "Released Claims" are defined as:

> . . . any and all claims, debts, liabilities, demands, obligations, guarantees, actions, or causes of action of whatever kind or nature, whether known or unknown, from December 2, 2015, through the Preliminary Approval Date, that were or could have been alleged based on the claims, facts, and/or allegations contained in the Action (hereinafter, the "Released Claims"), including those arising out of or reasonably related to all claims based on failure to provide meal periods, failure to provide rest periods, failure to pay meal period and/or rest period premium compensation, failure to pay meal period and/or rest period premium compensation based on the regular rate of pay, waiting time penalties for failure to pay all wages due upon termination of employment, failure to provide compliant wage statements, failure to reimburse for business expenses, and violation of California Business & Professions Code Section 17200 *et seq.*, including all claims of any kind for premium pay, liquidated damages, statutory penalties, civil penalties, restitution, expense reimbursement, interest, injunctive relief, punitive damages, other damages, costs, expenses, and attorneys' fees arising from the alleged violation of any provision of common law or statutory law which were or could have been raised as part of Plaintiff's claims, including but not limited to claims under California Labor Code Sections 201, 202, 203, 204, 210, 212, 223, 225.5, 226, 226.3, 226.7, 256, 512, 558, 1174, 1194, 1194.2, 1197, 1197.1, 1198, 2698, *et seq.*, and 2802, all provisions of the California Industrial Welfare Commission Wage Orders that provide the same or similar protection(s), and Section 17200 *et seq.* of the California Business and Professions Code. This release includes releases of all PAGA remedies arising from or reasonably related to any of the underlying claims that were or could have been brought in this Action.

      i.      Any Participating Class Member who is a member of the Meal & Rest Period Premium Settlement Class and not a member of the Branch Banking Settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

> Class releases only his or her claim for unpaid or underpaid meal and rest period premiums due to Wells Fargo's failure to pay meal period and/or rest period premium compensation based on the regular rate of pay, and any claim for wages, interest, damages, restitution, statutory and civil penalties, and fees and costs arising therefrom, including, but not limited to, claims under Labor Code Sections 201, 202, 203, 204, 210, 212, 223, 225.5, 226, 226.3, 226.7, 256, 512, 558, and 2698, *et seq.*, all provisions of the California Industrial Welfare Commission Wage Orders that provide the same or similar protection(s), and Section 17200 *et seq.* of the California Business and Professions Code.

*Id.*

The Settlement Agreement also provides that, although this is not a general release:

> Plaintiff and Participating Class Members each waives all rights and benefits afforded by Section 1542 of the Civil Code of the State of California with respect to the Released Claims only and does so understanding the significance of that waiver. Section 1542 provides:
>
> **"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."**

*Id.*

The Settlement Agreement's effect on subsequent actions is as follows:

> This Agreement shall be binding on, and have *res judicata* and preclusive effect in, the Action and any and all other pending and future lawsuits or other proceedings encompassed by the Release above, maintained by or on behalf of Plaintiff or any Participating Class Member. The Parties agree that the Release may be raised as a complete defense to and will preclude any action or proceeding based on any of the Released Claims.
>
> . . . If any Class Member initiates a new lawsuit against the Released Parties based on any claim released under this Agreement, and the Court invalidates the release, any recovery by the Class Member (on behalf of him or herself, the LWDA, and/or other allegedly aggrieved employees) shall be offset by the amount, if any, paid to the Class Member, the LWDA, and other allegedly aggrieved employees in connection with this Settlement. The language in this Paragraph 37 shall be included in the Notice of Settlement to Class Members.

*Id.* ¶ 37.

  E.  Notice and Payment Plan

    1. <u>In General</u>

Notice of the Settlement Agreement was administered by Rust Consulting (the "Administrator"). Dkt. 97

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

at 18. On September 25, 2023, Defendant provided the Administrator with a mailing list containing the names, last known mailing addresses, social security numbers and applicable employment information for 26,524 Settlement Class Members. Pikus Decl. ¶ 7. The Administrator conducted a National Change of Address search to determine the most recent address for each member of the Settlement Class. *Id.* ¶ 8. Thereafter, on October 10, 2023, the Administrator mailed the court-approved notice to the 26,524 class members. *Id.* ¶¶ 6, 9. The Class Notice advised Class Members that they could submit a Claim Form, exclusion, objection and/or dispute postmarked by November 24, 2023. *Id.* ¶ 9.

The Administrator performed 758 address traces on Class Notices returned as undeliverable. *Id.* ¶ 10. Of the 758 address traces performed, 621 more current addresses were obtained and Class Notices were promptly re-mailed. *Id.* Ten of these remailed Class Notices were returned as undeliverable. *Id.* Of the 758 traces performed, the Administrator did not obtain updated addresses for 137 undeliverable Class Notices, which remain undeliverable. *Id.* Therefore, a total of 147 Class Notices remain undeliverable as of December 7, 2023. *Id.* As of that same date, no Settlement Class Member had objected to the settlement, and nine had opted out of the settlement. *Id.* ¶¶ 14, 15.

IV.     **Analysis**

        A.     Class Certification

The Preliminary Approval Order analyzed whether conditional certification of the Settlement Class was appropriate. Dkt. 94 at 10–17. That analysis, which is incorporated by this reference, was the basis for granting conditional certification of the Settlement Class. The analysis, and the resulting outcome, have not changed. Therefore, the Final Approval Motion is **GRANTED** as to certification of the Settlement Class.[7]

        B.     Final Approval of the Settlement Agreement

                1.     Legal Standards

Rule 23(e) requires a two-step process in considering whether to approve the settlement of a class action. Fed. R. Civ. P. 23(e). *First*, in the preliminary approval process, a court must make a preliminary determination as to whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). At this stage, "the settlement need only be potentially fair." *Id.*

*Second,* if preliminary approval is granted, class members are notified and invited to make any objections. Upon reviewing the results of that notification, a court makes a final determination as to whether an agreement is "fundamentally fair, adequate, and reasonable." *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

In evaluating fairness, a court must consider "the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012). A

---

[7] As part of that analysis, Zamora and Simon were found to be adequate class representatives. However, it was noted that, with respect to Simon, this finding did not constitute a final determination that Simon is a member and representative of every sub-class. Dkt. 94 at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

court is to consider and evaluate several factors as part of its assessment of a proposed settlement. The following non-exclusive factors, which originally were described in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), are among those that may be considered during both the preliminary and final approval processes:

> (1) the strength of the plaintiff's case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the amount offered in settlement;
> (4) the extent of discovery completed and the stage of the proceedings;
> (5) the experience and views of counsel;
> (6) any evidence of collusion between the parties; and
> (7) the reaction of the class members to the proposed settlement.

*See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458-60 (9th Cir. 2000).

Each factor does not necessarily apply to every settlement, and other factors may be considered. For example, courts often consider whether the settlement is the product of arms-length negotiations. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). As noted, in determining whether preliminary approval is warranted, a court is to decide whether the proposed settlement has the potential to be deemed fair, reasonable and adequate in the final approval process. *Acosta*, 243 F.R.D. at 386.

The recently amended Fed. R. Civ. P. 23(e) provides further guidance as to the requisite considerations in evaluating whether a proposed settlement is fair, reasonable and adequate. A court must consider whether:

> (A) the class representatives and Plaintiff's counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3);[8] and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The factors set forth in Fed. R. Civ. P. 23(e) distill the considerations historically used by federal courts to evaluate class action settlements. *See id.* Advisory Committee Comments to 2018 Amendments to

---

[8] Fed. R. Civ. P. 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

Rule 23. As the comments of the Advisory Committee explain, "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment, but rather to address inconsistent "vocabulary" that had arisen among the circuits and "to focus the court and the lawyers on the core concerns" of the fairness inquiry. *Id.*

    2.    <u>Application</u>

The Preliminary Approval Order addressed many of the aforementioned factors. Dkt. 94 at 18–22. None of the facts and circumstances as to any of the factors has changed since that time. However, because the Administrator has completed the notice process, the reaction of Settlement Class Members to the proposed settlement may now be considered in evaluating whether it is fair and appropriate.

Of the 26,524 class members, none objected and only nine opted out. Pikus Decl. ¶¶ 13, 14. Six class members constitutes .02% of the total class. A low proportion of opts outs and objections "indicates that the class generally approves of the settlement." *In re Toys R Us-Delaware, Inc. -- Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 456 (C.D. Cal. 2014) (collecting cases); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." (*quoting Nat'l Rural Telecomms. Corp. v. DirecTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004))). Therefore, this factor weighs in favor of final approval.

Because there have been no material changes in any of the relevant circumstances since the Preliminary Approval Order, the same determinations are warranted with respect to the fairness analysis. Therefore, the distribution of the settlement funds in the manner set forth in the Preliminary Approval Order is approved, with the reserved issues addressed below.

    C.    Incentive Awards

        1.    <u>Legal Standards</u>

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977. To determine the reasonableness of incentive awards, the following factors may be considered:

> 1) The risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995).

        2.    <u>Application</u>

The Preliminary Approval Order approved an incentive award for Simon in the range of $2500 to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

$5000, and an incentive award in the range of $1000 to $2000 for Zamora. Dkt. 94 at 23. It stated that a final determination of the incentive award for each class representative would be made in connection with the motion for final approval and based on a review of any new evidence provided by the parties. *Id.*

In support of the Final Approval Motion, Plaintiffs renew the argument that an award of $7500 to Simon, the maximum amount allocated for him in the Settlement Agreement, is appropriate. Dkt. 97 at 33-34. In support of this position, Plaintiffs have submitted a declaration of Simon, in which he states that he has spent forty-five hours working in connection with this case and describes the work undertaken. Declaration of Caudley Simon ("Simon Decl."), Dkt. 97-3 ¶ 7. Plaintiffs' counsel had previously declared, in support of the Preliminary Approval Motion, that Simon spent approximately twenty-five hours in the role. Dkt. 62 ¶ 62. No explanation has been provided for the additional twenty hours. If forty-five hours is applied, the $7500 award would result in an hourly rate of approximately $167. In light of the new evidence provided as to the hours worked, and a consideration of the factors that apply, an award of $5000 is appropriate and is approved. Simon's work was valuable, and he accepted certain reputational risks, but considering the range approved in the Preliminary Approval Order, compensation at $5000, and not a higher level, is sufficient and appropriate, and compensation at a higher level is not warranted.

In support of the Final Approval Motion, Plaintiffs also renew the argument that an award of $5000 to Zamora, the maximum specified in the Settlement Agreement, is appropriate. Dkt. 97 at 34. Plaintiffs have submitted a declaration by Zamora, in which she states that she has spent at least twenty-five hours in connection with this matter and describes the work. Declaration of Natalia Zamora ("Zamora Decl."), Dkt. 97-4 ¶ 7. No time estimation was previously provided in support of the Preliminary Approval Motion. Dkt. 61 at 32. An award of $5000 would compensate Zamora at an hourly rate of $200. In light of the new evidence provided as to the number of hours worked, an award of $2500 is appropriate and approved. Although this is a modest increase from the preliminarily approved range, the notice to the Settlement Class provided that a request up to $5000 would be made. As a result, the final award is appropriate.

    D.    Attorney's Fees

        1.    <u>Legal Standards</u>

Attorney's fees and costs "may be awarded . . . where so authorized by law or the parties' agreement." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount*.*" *Id.* "If fees are unreasonably high, the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have [been] obtained." *Staton*, 327 F.3d at 964. Thus, a district court must "assure itself that the fees awarded in the agreement were not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel." *Id.* at 965.

District courts have discretion to choose between a lodestar method and the percentage method to evaluate the reasonableness of a request for an award of attorney's fees in a class action. *In re*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

*Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). A court may also choose one method and then perform a cross-check with the other. *See, e.g., Staton*, 327 F.3d at 973.

When using the percentage method, a court examines what percentage of the total recovery is allocated to attorney's fees. Usually, the Ninth Circuit applies a "benchmark award" of 25%. *Id.* at 968. However, awards that deviate from the benchmark have been approved. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ("Ordinarily, . . . fee awards [in common fund cases] range from 20 percent to 30 percent of the fund created."); *Schroeder v. Envoy Air, Inc.*, No. CV-16-4911-MWF-KSx, 2019 WL 2000578, at *7 (C.D. Cal. May 6, 2019) (internal citations omitted) ("[T]he 'benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors,' " including " '(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.' ").

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods.*, 654 F.3d at 941. After the lodestar amount is determined, a trial court "may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Such factors " 'includ[e] the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.' " *Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016) (quoting *In re Bluetooth Headset Prods.*, 654 F.3d at 941–42).

  2.  <u>Application</u>

    a)  Preliminary Approval

The Settlement Agreement provides for attorney's fees of up to $2,166,666.66, or 33.33% of the Gross Settlement Amount upon application to the Court. Dkt. 63 ¶ 18. The Preliminary Approval Order preliminarily approved attorney's fees in the range of $1.6 million to $2.1 million. Dkt. 94 at 30. It arrived at this range by applying the lodestar and percentage methods. *Id.* at 24-29. As to the percentage method, the Preliminary Approval Order considered the *Vizcaino* factors and concluded that, taking into consideration all of the relevant ones, an award above the 25% benchmark could be warranted. *Id.* at 25. However, applying the lodestar cross-check, the Preliminary Approval Order found that issues were raised with regard to the number of hours spent on certain tasks, warranting a reduction of the lodestar in the amount of $207,162.5, *i.e.*, from $589,062.50 to $381,900.00. *Id.* at 29. Based on these combined analyses, the Preliminary Approval Order preliminary approved a fee award in the range of $1,625,000 (representing 25% of the settlement amount) to $2,166,666.66 (representing 33.33% of the settlement amount). *Id.* at 29-30. That award was without prejudice to *de novo* review in connection with an anticipated motion(s) for attorney's fees and final approval in which additional evidence is presented as to the work performed. *Id.* at 30.

    b)  Final Approval

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

The Final Approval Motion seeks the approval of an award of attorney's fees of $2,166,666.66, which is at the top of the range approved in the Preliminary Approval Order. Dkt. 97 at 2. Plaintiffs' counsel argues that a 33.33% fee is reasonable because the percentage method is generally used in common fund settlements, rather than the lodestar method, and that it is consistent with the average fee award generally in class actions independent of the method that is applied. *Id.* at 30; *see Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66, n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). They also argue that an application of the criteria that apply in determining whether an award that is greater than the 25% "benchmark" weighs in favor of an award of 33.33% of the Gross Settlement Amount. Dkt. 97 at 27-30. With respect to the lodestar approach, Plaintiffs' counsel states that its lodestar amount is $650,223.75, reflecting 805.15 hours of attorney time. *Id.* at 33. In support of the Preliminary Approval Motion, the original proposed lodestar $589,062.50 reflected 728.7 hours of attorney time to date. Dkt. 94 at 25.

The following table summarizes the rates and hours submitted by Plaintiffs' counsel in connection with the work performed in this action. The rows for attorneys Shaun Setareh, Thomas Segal and Farrah Grant reflect adjustments in the number of billed hours included within the Preliminary Approval Order.[9]

| Attorney | Bar Year | Hourly Rate | Hours Billed | Total Billed |
|---|---|---|---|---|
| Shaun Setareh | 1999 | $925.00 | 155.25 (144) | $143,606.25 ($133,200.00) |
| Thomas Segal | 2002 | $900.00 | 411.8 (378.3) | $370,620.00 ($340,470.00) |
| Jose Patino | 2010 | $725.00 | 42.5 | $30,812.50 |
| Farrah Grant | 2013 | $650.00 | 117.70 (86) | $76,505.00 ($55,900.00) |
| Alex McIntosh | 2018 | $425.00 | 4.2 | $1,785.00 |
| Nolan Dilts | 2019 | $400.00 | 23.2 | $9,280.00 |
| Rotem Tamir | 2019 | $400.00 | 15.5 | $6,200.00 |
| Shane Farley | 2021 | $350.00 | 1.6 | $560.00 |
| Tyson Gibb | 2021 | $325.00 | 9.1 | $2,957.50 |
| Maxim Gorbunov | 2021 | $325.00 | 24.3 | $7,897.50 |
| **Total** | | | 805.15 (728.7) | $650,223.75 ($589,062.50) |
| Fees Sought | | | | $2,166,666.66 |
| **Multiplier** | | | | 3.00 (3.68) |

Declaration of Shaun Setareh ("Setareh Decl.", Dkt. 97-1 ¶ 31); Dkt. 94 at 25.

As previously stated in the Preliminary Approval Order, the hourly rates are deemed reasonable in light

---

[9] Both the new figures and prior figures referenced within the Preliminary Approval Order are included. The prior figures are included in parentheses below the new figures.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

of the quality and nature of the work performed by each attorneys, their corresponding skill and experience, and the rates charged by counsel in this District. Dkt. 94 at 26. There have been no changes to the proposed hourly rates since that decision. However, based on a review of the work performed since the Preliminary Approval Order, certain reductions in the newly reported hours are appropriate.

As required by the Standing Order, Plaintiffs' Counsel have provided tables summarizing the hours worked on this matter. The Preliminary Approval Order concluded that downward adjustments of certain time charges and exclusions were warranted based upon the number of hours spent on certain tasks. Dkt. 94 at 29. Plaintiffs' counsel has not addressed these reductions in connection with the Motion. Accordingly, they remain in place, and for the reasons stated in the Preliminary Approval Order, the lodestar amount is $381,900.00 for the work performed up to the time of the Preliminary Approval Motion. Dkt. 94 at 29. Based on a review of the hours reported since the issuance of the Preliminary Approval Order, certain reductions are warranted in calculating the lodestar for this work. These reductions are based on a review of the amount of time spent on particular matters, as well as the number of counsel who performed the work. They are summarized in the following table, in which the claimed amounts and what has been determined to be the reasonable, adjusted amounts are stated:

| Task | Claimed Amounts | Adjusted Amounts |
|---|---:|---:|
| Settlement and Settlement Approval | $32,291.25 | $21,987.50 |
| Opposing Motion to Intervene | $21,425.00 | $16,675.00 |
| Research | $2,700.00 | $990.00 |
| Case Management | $4,745.00 | $845.00 |
| **TOTAL** | $61,161.25 | $40,497.50 |

The addition of $40,497.50 to the lodestar calculated in the Preliminary Approval Order, results in a final lodestar of $422,397.50. This reflects a reduction of $277,826.25 from the proposed lodestar of $650,223.75.

Based on the adjusted lodestar of $422,397.50 and the requested award of $2,166,666.66, the multiplier would be 5.13. The award range approved in the Preliminarily Approval Order reflected a range of multipliers between 4.26 to 5.67 based on the adjusted lodestar for work completed at that time. Considering all the relevant factors, including the results achieved, the risks associated with accepting the matter on a contingency basis, the nature of the legal issues presented, the quality of the legal services and the calculations based on the different means of evaluating the appropriateness of a fee award, it is determined that an award of $2,000,000 in attorney's fees is fair, reasonable and appropriate. This reflects a multiplier of 4.73 above the lodestar and approximately 30.8% of the Gross Settlement Amount.

      E.    Litigation Costs

In support of the Preliminary Approval Motion, no evidence was proffered as to the request for litigation costs. Therefore, this issue is considered *de novo* based on the evidence that has been proffered in support of the Motion. Dkt. 94 at 30. Plaintiffs' Counsel seeks reimbursement for $44,242.80 in litigation costs. Dkt. 97 at 33. This request is supported by a spreadsheet detailing the costs, including filing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
|---|---|---|---|
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

fees, mediation fees, expert costs, Westlaw charges, and PACER charges. Setareh Decl. ¶ 27; Exh. 1, Dkt. 97-1 at 25. Based on a review of the information provided, it is determined that the costs claimed are reasonable. Therefore, an award of litigation costs of $44,242.80 is approved.

    F.    Settlement Administrator Costs

In support of the Preliminary Approval Motion, no evidence was proffered as to the request for Settlement Administrator costs, many of which had yet been incurred. Therefore, this request is also considered *de novo* based on the evidence that has now been proffered. Dkt. 94 at 30. The Settlement Agreement provided an estimated payment of approximately $69,677 to the Settlement Administrator, Rust, to be paid from the Gross Settlement Fund. Settlement Agreement ¶ 19. Chris Pikus, Senior Project Manager for the Rust, declares that the total cost for the administration of the settlement, including fees incurred and estimated future costs for completion of the administration, will be $69,667. Pikus Decl. ¶ 17. Plaintiffs' counsel, Shaun Setareh, declares that in his experience as plaintiffs' counsel in similar wage and hour class actions with a similar number of employees, this amount is fair, adequate and reasonable. Setareh Decl. ¶ 49. A breakdown of incurred costs, as well as the costs to completion are provided. Pikus Decl. Exh. B, Dkt. 98 at 15-16. Based on a review of the information provided, it is determined that Settlement Administrator costs of $69,677 are reasonable. Therefore, a payment of $69,677 to the Settlement Administrator, Rust, is approved.

**V.**    <u>**Conclusion**</u>

For the reasons stated in this Order, the Motion is **GRANTED,** subject to certain modifications to the amounts requested for attorney's fees and incentive awards as discussed in this Order and reflected in the following table.

| **Description of Amount** | **Amount** | **Percent** |
|---|---:|---:|
| **Gross Settlement Amount** | **$6,500,000.00** | **100%** |
| Simon Service Payment Award | $5,000.00 | <0.1% |
| Zamora Service Award | $2,500.00 | <0.1% |
| Attorneys' Fees Award to Class Counsel | $2,000,000.00 | 30.8% |
| Class Counsel's Litigation Costs | $44,242.80 | 0.7% |
| Third Party Administrator Costs | $69,667.00 | 1.1% |
| LWDA Payment | $150,000.00 | 2.3% |
| **Net Settlement Amount** | **$4,228,590.20** | **65.1%** |

The parties shall meet and confer as to the form of a proposed judgment, and then lodge a proposed judgment within seven days of the issuance of this Order if they agree on the form. If the parties do not agree on the form of a proposed judgment, they shall lodge the judgment as proposed by Plaintiffs, with a separate redline filing that shows any modifications proposed by Defendant. The proposed judgment(s) shall not include any recital of pleadings or record of prior proceedings, *see* Fed. R. Civ. P. 54(a), and shall comply with the requirements of judgment for a class action. *See* Fed. R. Civ. P. 23(c)(3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV20-00211 JAK (ASx) | Date | January 22, 2024 |
| Title | Caudley Simon v. Wells Fargo Bank, National Association | | |

**IT IS SO ORDERED.**

                                                                                                                                                : 

Initials of Preparer     tj